WILLIAM H. Y., Petitioner
Below, Appellant,

v.

MYRNA L. Y., Respondent
Below, Appellee.

Supreme Court of Delaware.

Submitted: July 15, 1982.

Decided: Sept. 7, 1982.

Joseph W. Benson, Charles Brandt (argued), Brandt & Benson, Wilmington, for petitioner below, appellant.

Bertran S. Halberstadt, Lindh & Halberstadt, Wilmington, for respondent below, appellee.

Before HERRMANN, Chief Justice, QUILLEN and MOORE, JJ.

MOORE, Justice:

In this appeal from an order of the Superior Court of the State of Delaware, affirming the Family Court's denial of a father's petition for custody of his 12 year old son, we confront the efficacy of a post-1971 Superior Court order incorporating custody provisions of a separation agreement into a divorce decree. Relying on 13 Del.C. § 729(b), pertaining to modification of child custody decrees, both the Superior and Family Courts held that the father failed to show that the child's current environment endangered his physical health or had significantly impaired his emotional development, thereby precluding any other considerations, including the specifically stated desires of the child in favor of his father as custodian.[1] We reverse for the reasons set forth below.

I

The parties were divorced on August 27, 1975. The final divorce decree entered by the Superior Court expressly incorporated a separation agreement of the parties dated July 23, 1975, which provided *inter alia* that the wife would have "sole custody and legal guardianship" of their son, William, then five years old. On August 5, 1980, the father petitioned the Family Court for sole custody of William, who by then was ten years old. The Family Court denied the father's petition on the ground that he had not met his enhanced burden of proof under the custody modification statute, 13 *Del.C.* § 729(b), that the child's present environment "endangers his physical health" or "impairs his emotional development." This was so despite the Family Court's specific finding that:

> "The child expresses a 'sound' desire to live with the father, and the father has maintained an 'excellent' relationship with his son, i.e., Boy Scouts, baseball, etc."

Significantly, the Family Court concluded that if the party seeking modification is unable to make the requisite showing of "endangerment" or "impairment", under 13 *Del.C.* § 729(b) the Court may not consider the best interests criteria set forth in 13 *Del.C.* § 722 including the "wishes of the

---

1. 13 *Del.C.* § 729 provides:

(a) If a motion for modification has been filed, whether or not it was granted, no subsequent motion may be filed within 2 years after disposition of the prior motion, unless the Court decides on the basis of affidavits that there is reason to believe that the child's present environment may endanger his physical health or significantly impair his emotional development.
(b) The Court shall not modify a prior custody decree unless it finds that the modification is necessary to serve the best interests of the child. In applying these standards the Court shall retain the custodian established by the prior decree unless:
(1) The custodian agrees to the modification; or
(2) The child has been integrated into the family of the petitioner with the consent of the custodian; or
(3) The child's present environment endangers his physical health or significantly impairs his emotional development and the harm likely to be caused by a change of environment is outweighed by the advantage of a change to the child.

child as to his custodian".[2] On appeal, the Superior Court affirmed basically for the same reason and stressed the importance of the policy reflected in § 729 of protecting the child from possible harm by changing custodians and thereby changing the child's environment. In essence these rulings are that once child custody is established by agreement or pursuant to the broad policy aspects and criteria of our custody statutes,[3] thereafter all matters of custody are governed by the narrow and restrictive provisions of but a part of one statute.[4]

II

■ Jurisdiction over custody matters in this state is governed by statute. *duPont v. duPont,* Del.Supr., 216 A.2d 674 (1966). Prior to the expansion and realignment of the jurisdiction of the Family Court by the General Assembly in 1971, the Superior Court and the Family Court had concurrent original subject matter jurisdiction over custody issues. *Husband P. v. Wife P.,* Del.Supr., 348 A.2d 327, 329 (1975). However, in 1971, the legislature conferred exclusive original jurisdiction upon the Family Court in many areas of domestic relations, including custody.[5] So when the parties were divorced in 1975, the Superior Court no longer had any original jurisdiction over custody matters. Obviously, it was without jurisdiction to enter a binding custody decree in the first instance, and the parties to a divorce action then pending in the Superior Court could not confer subject matter jurisdiction by consent or agreement. *duPont v. duPont,* Del.Supr., 216 A.2d at 679. Thus, to the extent that the divorce decree entered by the Superior Court purported to award custody of the parties' minor children to the wife, it was without legal effect as a custody decree.

■ This is particularly significant in light of both the Family and Superior Courts' reliance upon 13 *Del.C.* § 729(b), which by its terms, the wife argues, severely limits a change in custody whenever a prior custody "decree" exists. But there is no valid existing custody decree here, and reliance by the courts below upon 13 *Del.C.* § 729(b), dealing with modification of a prior custody decree, was legal error. Therefore, we reverse and remand this action with instructions that the Family Court hear and decide the father's petition for custody of his son in accordance with the criteria of 13 *Del.C.* § 722.

III

Because of the extremely restrictive and narrow approach to the modification of custody decrees, which the Family and Superi-

2. 13 *Del.C.* § 722 provides:
   (a) The Court shall determine custody in accordance with the best interests of the child. In determining the best interests of the child, the Court shall consider all relevant factors including:
   (1) The wishes of the child's parent or parents as to his custody;
   (2) The wishes of the child as to his custodian;
   (3) The interaction and interrelationship of the child with his parent or parents, his siblings and any other person who may significantly affect the child's best interests;
   (4) The child's adjustment to his home, school and community; and
   (5) The mental and physical health of all individuals involved.
   (b) The Court shall not presume that a parent, because of his or her sex, is better qualified than the other parent to act as custodian for a child, nor shall it consider conduct of a proposed custodian that does not affect his relationship to the child.

3. 13 *Del.C.* § 701, *et seq.*

4. 13 *Del.C.* § 729(b), *supra.*

5. 10 *Del.C.* § 921 provides in pertinent part:
   The [Family] Court shall have exclusive original civil jurisdiction in all proceedings in this State concerning:

   \* \* \* \* \* \*

   (3) Enforcement of any law of this State or any subdivision or any regulation promulgated by a governmental agency, or any petitions or actions, for the education, protection, control, visitation, possession, custody, care, or support of children;
   See also 13 *Del.C.* § 721(a) which provides:
   (a) A child custody proceeding is commenced in the Family Court of the State, or as otherwise provided by law, by a parent filing a petition seeking custody of the child in the county where the child is permanently a resident of where he is found.

or Courts have taken, we believe it desirable to note for possible legislative re-examination an apparent clash between 13 *Del.C.* § 729(b) and what otherwise appears to be a broader, more pervasive legislative intent regarding custody matters.

The wife has argued that once custody is established by whatever means, and regardless of the age of the child at the time, if modification is sought then all other statutory criteria are overridden unless that child's health is endangered or his emotional development impaired. Thus, the conflict is posed, because one crucial factor in a custody proceeding is a determination of the best interests of the child, including his preference of custodian. 13 *Del.C.* § 722(a)(2). The weight to be given this preference depends on the child's intelligence and maturity. In *duPont v. duPont,* 216 A.2d at 680–81, this court stated:

"The Superior Court held that the preference of minor children to be in the custody of one parent or the other is at most of minor consideration in making a determination of an award of custody. As a matter of fact, their preferences were completely ignored by the Court. We think this was error for we believe the law to be that if a child is of sufficient maturity to form an intelligent opinion upon the subject, there is no justification for that opinion to be wholly ignored. The preference of a child for one parent or the other is, of course, not controlling on the Court because it must always yield to the paramount consideration of what is best for the child, but, nevertheless it may not be ignored. Indeed, if other considerations are equal, the desire of the child may be decisive. The question to be determined is whether or not the child has reached an age of sufficient discretion to form an intelli-

gent preference, and whether or not the preference is expressed because of some temporary dissatisfaction or passing whim." [citations omitted]

This rule has apparently been adopted by our neighboring states.[6] Thus, it is only when the child is very young, immature, or unable to articulate a sound basis for his wishes as to custody that the preference is not entitled to great weight. But should this be a permanent bar to a child's future expression and a court's subsequent examination of such a preference?

## IV

While we are not required either to sanction or reject the interpretation of the relationship between § 722 and § 729 given by the Courts below, and do not do so here, we perceive a result that the General Assembly may not have intended. Legislative history supports this concern. In 1974, the General Assembly enacted a comprehensive revision of the laws relating to custody, which included adoption of § 722 and § 729 in their present form. 59 *Del.L.,* Ch. 569, § 4, *codified at* 13 *Del.C.,* Ch. 7, sub ch. II. It is clear from the language of the overall revision, and its recognition of the existing decisional law, that the paramount considerations in custody and visitation determinations are the welfare and best interests of the child, to the end that the child has a decent and respectable home.[7] 13 *Del.C.* § 722; *Cline v. Hartzler,* Del.Supr., 227 A.2d 210 (1967); *In re Two Minor Children,* Del.Supr., 173 A.2d 876 (1961); *R. A. D. v. M. E. Z.,* Del.Super., 414 A.2d 211 (1980). Significantly, this includes legislative recognition in 13 *Del.C.* § 722(a)(2) of the Supreme Court's prior decisions that in all custody matters one of the controlling factors in determining the best interests of the

6. *See, e.g., Dunham v. Dunham,* Conn.Supr., 97 Conn. 440, 117 A. 504 (1922); *Ross v. Pick,* Md.Ct.App., 199 Md. 341, 86 A.2d 463 (1952); *Merchant v. Bussell,* Me.Supr., 139 Me. 118, 27 A.2d 816 (1942); *Beck v. Beck,* N.J.Supr., 86 N.J. 480, 432 A.2d 63 (1981); *Wrecsics v. Broughton,* Pa.Super., 285 Pa.Super. 90, 426 A.2d 1155 (1981); *Cameron v. Cameron,* Vt. Supr., 137 Vt. 12, 398 A.2d 294 (1979).

7. Section 729 makes specific reference to consideration of the best interests of the child, and it is clear from other sections of the Code that the provisions of Chapter 7 pertaining to custody matters should be read as a cohesive whole. *See, e.g.,* 13 *Del.C.* § 1519(a)(2).

child is the wishes of that child as to his custodian.

We recognize that § 729 is based, in part, upon the equally worthy policy goal of providing stability and continuity in the child's home life. Certainly, a child's emotional and intellectual development may be impaired by numerous custody changes involving school transfers and other upheavals making it difficult for the child to maintain established emotional ties and friendships.[8] Thus, the importance of the policy goal of preventing multiple applications for modification of custody, in order to deter never ending custody battles, cannot be minimized, and nothing we say here is intended to do so. Moreover, the Courts have ample authority and discretion to deal with questions of that type. We merely perceive that this goal may be frustrated by ignoring full consideration of the best interests criteria and general welfare of the child, including his rational wishes as to custody.[9]

According to the interpretation of § 729 urged by the wife upon the Courts below, the best interests criteria delineated in § 722 are determinative only in the initial custody proceeding. Thereafter, consideration of the best interests of the child, otherwise mandated by § 722, become largely irrelevant unless the parent seeking modification of the custody decree can show that: (1) the custodian agrees to the modification; or (2) the child has been integrated into the petitioner's family with the consent of the custodian; or (3) the child's present environment endangers his physical health or significantly impairs his emotional development and the harm likely to be caused by the change of environment is outweighed by the advantage of a change to the child. 13 *Del.C.* § 729(b).[10] In effect, this interpretation would relegate children to the initial custody determination indefinitely, despite their wishes and other equally significant statutory requirements to the contrary.[11]

**8.** The interest in providing a stable and uninterrupted home life for the child is protected, at least in part, by the two-year moratorium on motions for modification of custody contained in 13 *Del.C.* § 729(a) absent a showing of potential physical and emotional harm. Within the overall framework of Delaware law there is a cogent and possibly persuasive argument to be made that it is a change during the two-year period which the provisions of § 729(b) primarily address.

**9.** The language of § 729 closely resembles the language of a provision found in the Uniform Marriage and Divorce Act. *Compare* 13 *Del.C.* § 729 *with* Uniform Marriage and Divorce Act § 409. The Superior Court relied heavily on the commentary to this section of the model act. The commentary to a model act certainly has significance, where the model act has been adopted in its entirety, but here the legislature did not do so. Thus, where the commentary in question seems to be at odds with the broader legislative scheme actually adopted, is it entitled to much weight? In posing this query we note that the commentary makes no reference to the wishes of the child as to his custodian, a consideration which is given great emphasis by the General Assembly in § 722 and prior Delaware case law.

**10.** The husband, on the other hand, urges that § 729(a) and (b) be read together as creating a two-year moratorium on modification of a custody decree unless the moving party can make the showing set forth in § 729(b). After expi-

ration of the two-year period, however, the best interests of the child mandated by 13 *Del.C.* § 722 will prevail. Considering Delaware law on the subject as a whole, this may be the more logical interpretation.

In examining the interrelationship between these two statutes, we note that certain established rules of statutory construction appear applicable. When construing two provisions in a legislative enactment, the Court will attempt to harmonize them to the extent possible. *See Hamilton v. Trivits,* Del.Super., 340 A.2d 178 (1975). In other words, the two provisions will be read *in pari materia.* *duPont v. Mills,* Del.Ct. en banc, 196 A. 168 (1937). And a statute will not be construed so as to require an absurd or unreasonable result. *C. v. C.,* Del. Supr., 320 A.2d 717 (1974); *Nationwide Mutual Ins. Co. v. Krongold,* Del.Supr., 318 A.2d 606 (1974).

**11.** While our decision in the case does not require consideration of the husband's constitutional arguments, we recognize that in recent years the Supreme Court of the United States has indicated that a parent's interest in the care, custody, and companionship of his children is fundamental, and an interpretation of § 729 as a permanent bar to modification, unless the petitioning parent meets a substantially higher burden of proof, may not comport with the 14th Amendment's due process guarantees. *See Santosky v. Kramer,* —— U.S. ——, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); *Lassiter v.*

These are the bases of our concern that the General Assembly may not have intended such a result, especially when changes which naturally occur through the passage of time may indicate that a child's best interests, as otherwise statutorily mandated, should be given full consideration. Accordingly, we suggest that this anomaly, so strongly urged upon us by the wife, may be an appropriate subject of legislative re-examination.

REVERSED AND REMANDED.

*Department of Social Services,* 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981); *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972).