**James B. FRIANT, Petitioner Below, Appellant,**

v.

**Sandra J. FRIANT, Respondent Below, Appellee.**

Supreme Court of Delaware.

Submitted: Nov. 29, 1988.
Decided: Feb. 2, 1989.

Arlen Mekler, Wilmington, on behalf of appellant.

Norman Levine, Wilmington, on behalf of appellee.

Before, CHRISTIE, C.J., HORSEY, MOORE, WALSH and HOLLAND, JJ. (constituting the Court *en banc*).

HOLLAND, Justice:

James B. Friant ("Father") and Sandra J. Friant ("Mother") are the parents of two minor children, Michelle L. Friant and James B. Friant, Jr. The Father and Mother are divorced. The Mother has legal custody of both children, as part of a New Jersey divorce decree.[1] For several years, since the divorce, the children have resided with their Mother in Delaware. The Father has also resided in Delaware for the last several years.

On April 30, 1988, the Father filed a motion and affidavit to modify custody in the Family Court of the State of Delaware.[2] The motion and affidavit alleged that:

Petitioner/Father believes it is in the best interest of the minor children, whose custody has been with Mother pursuant to a voluntary consent order entered more than two years ago, to wit; October 1, 1982, in that Father is better able to provide for their physical and emotional needs and growth at this stage in their life. Substantial changes in circumstances have occurred since the initial custody Order, in that the children are now five years older and Father is better able to provide for their needs.

In ruling on the Father's motion, the Family Court acknowledged that the controlling consideration in *initially* deciding a child custody petition is the "best interests" standard set forth in 13 *Del.C.* § 722. However, the Family Court concluded that any party seeking *modification* of a custody decree must demonstrate more than that a change would be in the child's best interests. The Family Court held that a party seeking to modify a prior custody decree must be prepared to prove that the child's present environment "endangers" his physical health or significantly "impairs" his emotional development, as provided for in 13 *Del.C.* § 729. The Family Court dismissed the Father's motion to modify custody, without a hearing, because its allegations, even if proven, would not satisfy the statutory burden of proof imposed by 13 *Del.C.* § 729.

In this appeal, the Father challenges the decision of the Family Court to dismiss his motion to modify custody. On appeal, the Father argues that the enhanced statutory burden of proof set forth in 13 *Del.C.* § 729 only applies to motions for modification of custody that are brought within two years of a prior custody decision. The Father argues that, since more than two years had elapsed since the entry of the prior custody decision, his motion to modify that prior custody order was governed by and met the "best interests" standard set forth in 13 *Del.C.* § 722.

We have concluded that the Father's position is meritorious. Accordingly, the decision of the Family Court to dismiss the father's motion, without a hearing, must be reversed.

*Historical Background*

In 1971, the General Assembly conferred exclusive jurisdiction for custody matters upon the Family Court. 10 *Del.C.* § 921. In 1974, the General Assembly enacted a comprehensive revision of the laws relating to custody, which included adoption of Section 722 and Section 729 in their present form. 59 *Del.L.* Ch. 569, Section 4 (July 29, 1974), *codified* at 13 *Del.C.* §§ 721–731. It

---

1. With regard to the custody of their children, the New Jersey divorce decree provided:
   IT IS FURTHER ORDERED that the custody of the children born of this marriage, Michelle L. Friant, born September 16, 1975 and James B. Friant, Jr., born November 9, 1978, shall remain with the plaintiff Sandra J. Friant, subject to the further order of this Court.

2. 13 *Del.C.* § 721(a) provides that "[a] child custody proceeding is commenced in the Family Court of the State, or as otherwise provided by law, by a parent filing a petition seeking custody of the child in the county where the child is permanently a resident or where he is found."

is clear from the language in the overall statutory revision, and its recognition of the existing decisional law, that the General Assembly intended the paramount considerations in custody and visitation determinations to be "the welfare and best interests of the child, to the end that the child has a decent and respectable home." *William H.Y. v. Myrna L.Y.*, Del.Supr., 450 A.2d 406, 409 (1982). Nevertheless, since 1974, the Family Court has had difficulty in reconciling what appears to have been a broad legislative intent regarding custody matters with the differing standards set forth in 13 *Del.C.* §§ 722 and 729.

In its efforts to resolve what the Family Court perceived as an apparent tension in those statutes, this Court expressed its concern that the Family Court had taken an "extremely restrictive and narrow approach to the modification of custody decrees." *William H.Y. v. Myrna L.Y.*, 450 A.2d at 408. However, in *William H.Y. v. Myrna L.Y.*, this Court was unable to resolve those concerns because the case was decided on a jurisdictional basis.[3] The same issues relating to the proper standard for ruling upon petitions to modify custody are properly before this Court in the case *sub judice*. Therefore, we are now called upon to interpret and, if possible, to definitively reconcile the statutory scheme relating to the modification of custody orders. *See* 13 *Del.C.* §§ 721–731.

### Family Court Decisions

The decisions of the Family Court have held that the "best interests" standard set forth in 13 *Del.C.* § 722[4] is conclusive only when the initial custody determination is made and that the provisions of 13 *Del.C.* § 729 are controlling thereafter. The Family Court has held that petitions to modify custody orders that are filed *within* two years of a prior custody decree are controlled by 13 *Del.C.* § 729(a)[5] and (b)(3) and that petitions to modify custody orders that are filed *more than* two years after the entry of a prior custody order are controlled by 13 *Del.C.* §§ 729(b)[6] and 730.[7]

---

3. In *William H.Y. v. Myrna L.Y.*, no valid custody decree existed since the purported custody award at issue was entered by the Superior Court at a time when it no longer had original jurisdiction over custody matters. 450 A.2d at 408.

4. 13 *Del.C.* § 722 provides, as follows:
    (a) The Court shall determine custody in accordance with the best interests of the child. In determining the best interests of the child, the Court shall consider all relevant factors including:
    (1) The wishes of the child's parent or parents as to his custody;
    (2) The wishes of the child as to his custodian;
    (3) The interaction and interrelationship of the child with his parent or parents, his siblings and any other person who may significantly affect the child's best interests;
    (4) The child's adjustment to his home, school and community; and
    (5) The mental and physical health of all individuals involved.
    (b) The Court shall not presume that a parent, because of his or her sex, is better qualified than the other parent to act as custodian for a child, nor shall it consider conduct of a proposed custodian that does not affect his relationship to the child.

5. 13 *Del.C.* § 729(a) provides:
    (a) If a motion for modification has been filed, whether or not it was granted, no subsequent motion may be filed within 2 years after disposition of the prior motion, unless the Court decides on the basis of affidavits that there is reason to believe that the child's present environment may endanger his physical health or significantly impair his emotional development.

6. 13 *Del.C.* § 729(b) provides:
    (b) The Court shall not modify a prior custody decree unless it finds that the modification is necessary to serve the best interests of the child. In applying these standards the Court shall retain the custodian established by the prior decree unless:
    (1) The custodian agrees to the modification; or
    (2) The child has been integrated into the family of the petitioner with the consent of the custodian; or
    (3) The child's present environment endangers his physical health or significantly impairs his emotional development and the harm likely to be caused by a change of environment is outweighed by the advantage of a change to the child.

7. 13 *Del.C.* § 730 provides:
    A party seeking a temporary custody order or modification of a custody decree shall submit together with his moving papers an affidavit setting forth facts supporting the requested order or modification and shall give notice, together with a copy of his affidavit, to other

Since the Family Court has concluded that once custody is established by a Court, if a modification is sought, all other statutory criteria are overridden by 13 *Del.C.* § 729(a) or (b), it has routinely denied all petitions to modify custody unless it is alleged and proven that the child's health is being endangered or the child's emotional development is being impaired.

Section 729 is undoubtedly based upon the "worthy policy goal of providing stability and continuity in the child's home life." *William H.Y. v. Myrna L.Y.*, 450 A.2d at 410. However, this goal may be frustrated if Section 729 is always the only standard for modifying custody and a full consideration of the best interests criteria and gener-

al welfare of the child is precluded forever, once custody has been established. *Id.* The practical effect of the Family Court's interpretation of the statutory provisions relating to custody is to relegate "children to the initial custody determination indefinitely, despite their wishes or other equally significant statutory requirements to the contrary." *Id.*

■ In support of its position, the Family Court has relied heavily upon the commentary to Section 409 of the Uniform Marriage and Divorce Act ("U.M.D.A.").[8] Indeed, the language of 13 *Del.C.* § 729 does resemble the language found in Section 409 of the U.M.D.A.[9] "[T]he commen-

---

parties to the proceeding, who may file opposing affidavits. The Court shall deny the motion unless it finds that adequate cause for hearing the motion is established by the affidavits, in which case it shall set a date for hearing on an order to show cause why the requested order or modification should not be granted.

8. The Commentary to Section 409 of the Uniform Marriage and Divorce Act states:

Most experts who have spoken to the problems of post-divorce adjustment of children believe that insuring the decree's finality is more important than determining which parent should be the custodian. See Watson, The Children of Armageddon: Problems of Custody Following Divorce, 21 Syracuse L.Rev. 55 (1969). This section is designed to maximize finality (and thus assure continuity for the child) without jeopardizing the child's interest. Because any emergency which poses an immediate threat to the child's physical safety usually can be handled by the juvenile court, subsection (a) prohibits modification petitions until at least two years have passed following the initial decree, with a "safety valve" for emergency situations. To discourage the noncustodial parent who tries to punish a former spouse by frequent motions to modify, the subsection includes a two-year waiting period following each modification decree. During that two-year period a contestant can get a hearing only if he can make an initial showing, by affidavit only, that there is some greater urgency for the change than that the child's "best interest" requires it. During the two-year period the judge should deny a motion to modify, without a hearing, unless the moving party carries the onerous burden of showing that the child's present environment may endanger his physical, mental, moral, or emotional health.

Subsection (b) in effect asserts a presumption that the present custodian is entitled to

continue as the child's custodian. It does authorize modifications which serve the child's "best interest;" but this standard is to be applied under the principle that modification should be made only in three situations: where the custodian agrees to the change; where the child, although formally in the custody of one parent, has in fact been integrated into the family of the petitioning parent (to avoid encouraging noncustodial kidnapping, this ground requires the consent of the custodial parent); or where the noncustodial parent can prove both that the child's present environment is dangerous to physical, mental, moral, or emotional health and that the risks of harm from change of environment are outweighed by the advantage of such a change to the child. The last phrase of subsection (b)(3) is especially important because it compels attention to the real issue in modification cases. Any change in the child's environment may have an adverse effect, even if the noncustodial parent would better serve the child's interest. Subsection (b)(3) focuses the issue clearly and demands the presentation of evidence relevant to the resolution of that issue.

Subsection (c) provides an additional sanction against vexatious and harassing attempts to relitigate custody.

Unif. Marriage & Divorce Act § 409 commentary, 9A U.L.A. 628–29 (1987).

9. Section 409 of the U.M.D.A. provides:

(a) No motion to modify a custody decree may be made earlier than 2 years after its date, unless the court permits it to be made on the basis of affidavits that there is reason to believe the child's present environment may endanger seriously his physical, mental, moral, or emotional health.

(b) If a court of this State has jurisdiction pursuant to the Uniform Child Custody Jurisdiction Act, the court shall not modify a prior custody decree unless it finds, upon the basis

tary to a model act certainly has significance, where the model act has been adopted in its entirety, but here the legislature did *not* do so." *William H.Y. v. Myrna L.Y.*, 450 A.2d at 410, n. 9 (emphasis added). In examining the Delaware statutes which were enacted in 1974, relating to custody, this Court has asked somewhat rhetorically: "where the commentary in question seems to be at odds with the broader legislative scheme actually adopted, is it entitled to much weight?" *Id.* We now answer that question directly in the negative.

### Construction of the Statutory Scheme

■■■ "In examining the interrelationship between these two statutes [Section 722 and Section 729], we note that certain established rules of statutory construction appear applicable." *Id.* at 410 n. 10. First, "[w]hen construing two provisions in a legislative enactment, the Court will attempt to harmonize them to the extent possible." *Id.* This is accomplished by reading two statutory provisions *in pari materia. Id.* Second, a statute should not be construed in such a way "as to require an absurd or unreasonable result." *Id.*

Under the interpretation of Section 729 followed by the Family Court and advanced by the Mother in this appeal, the best interests of the child standard becomes largely irrelevant in considering petitions to modify custody. This is so because under that interpretation the child's best interests are only considered after the parent seeking to modify a prior custody order can show

either consent to the modification by the custodial parent or endangerment or impairment to the child from the present environment. *See,* 13 *Del.C.* § 729(b)(1)–(3). We find that the General Assembly did not intend such a result.[10]  *C. v. C.*, Del.Supr., 320 A.2d 717, 722 (1974).

Section 729 is but one part of an entire statutory scheme addressing custody matters. *See,* 13 *Del.C.* §§ 721–731. While the language of Section 729 is similar to that found in Section 409 of the U.M.D.A., the proper interpretation of the standards by which custody may be modified requires this Court to go beyond the solitary language of Section 729. The "paramount consideration" in custody determinations has always been aimed at addressing the "welfare and best interests of the child." *William H.Y. v. Myrna L.Y.*, 450 A.2d at 409. The long established rule in Delaware is that the best interests of the child is the primary concern in matters of custody. *See, e.g., Maureen F.G. v. George W.G.*, Del.Supr., 445 A.2d 934, 936 (1982); *Cline v. Hartzler*, Del.Supr., 227 A.2d 210, 212 (1967); *DuPont v. DuPont*, Del.Supr., 216 A.2d 674, 680 (1966); *In re Two Minor Children*, Del.Supr., 173 A.2d 876, 878–79 (1961); *Smith v. Smith*, Del.Super., 45 A.2d 879, 880–81 (1946); *Cf. Solis v. Tea*, Del.Supr., 468 A.2d 1276, 1283 (1983). To this end, Section 729 must be harmonized, if possible, with the broad statutory scheme and the "best interests" provisions set forth in Section 722. *See, Hamilton v. Trivits*, Del.Super., 340 A.2d 178, 180

---

of facts that have arisen since the prior decree or that were unknown to the court at the time of entry of the prior decree, that a change has occurred in the circumstances of the child or his custodian, and that the modification is necessary to serve the best interest of the child. In applying these standards the court shall retain the custodian appointed pursuant to the prior decree unless:
(1) the custodian agrees to the modification;
(2) the child has been integrated in the family of the petitioner with consent of the custodian; or
(3) the child's present environment endangers seriously his physical, mental, moral, or emotional health, and the harm likely to be caused by a change of environment is outweighed by its advantages to him.

(c) Attorney fees and costs shall be assessed against a part seeking modification if the court finds that the modification action is vexatious and constitutes harassment.
Unif. Marriage & Divorce Act § 409, 9A U.L.A. 628 (1987).

**10.** In *William H.Y. v. Myrna L.Y.*, we realized, as this case has proven, that it might be years before this Court would be called upon to definitively construe the custody statutes. We urged the General Assembly to re-examine this area of the law because of the anomaly created by the Family Court's narrow interpretation of Section 722 and Section 729, despite an apparently broad legislative intention to the contrary. 450 A.2d at 411. This Court is now required to undertake that task.

(1975); *Dupont v. Mills*, Del.Ct. en banc, 196 A. 168, 177 (1937).

The Father argues that this harmony can be achieved if 13 *Del.C.* § 729(a) and (b) are read together as creating a two-year moratorium on the modification of a custody decree, unless the moving party can make the showing required by the provisions of Section 729. The Father argues further that after the expiration of the two-year period, a proper reading of the statutory scheme requires the best interests of the child, as set forth in 13 *Del.C.* § 722, to be the determinative consideration. After examining the Delaware law on the subject of custody as a whole, we find that this is the logical and proper construction of the Delaware statutes. *William H.Y. v. Myrna L.Y.*, 450 A.2d at 410 n. 10.[11]

We hold that a person seeking to modify a custody decree, within two years of the prior decree, must satisfy the burdens imposed by Section 729(a) and (b). These two subsections should be "read together as creating a two-year moratorium on modification of a custody decree unless the moving party can make the showing set forth in [Section] 729(b)." *William H.Y. v. Myrna L.Y.*, Del.Supr., 450 A.2d at 410, n. 10. A person seeking to modify a prior custody decree beyond this two-year moratorium must satisfy the burdens imposed by Section 722 in order to prevail. That is to say, beyond the two-year period governed by Section 729, each motion for the modification of a prior custody decree shall be decided according to the best interests of the child, in accordance with standards set forth in Section 722.

This interpretation of the Delaware statutory scheme accomplishes the overriding policy purpose of the Delaware child custody laws, i.e., to provide for the best interests of the child on a continuing, but non-disruptive, basis. First, it requires initial custody decisions to be made in a child's best interests. 13 *Del.C.* § 722. Second, it recognizes the need for providing a child with a stable and continuous home life by imposing a two-year moratorium on a modification of custody, in the absence of compelling circumstances. 13 *Del.C.* § 729(a) and (b). Third, it recognizes that the factors which were determinative in a prior custody decision are susceptible to change and provides an opportunity for their re-examination in intervals of at least two years. This construction of the Delaware statutory scheme is compelled by the "general statutory intention of the General Assembly." *C. v. C.*, Del.Supr., 320 A.2d at 722.

## Conclusion

The decision of the Family Court to dismiss the Father's motion to modify the prior custody order, without a hearing, is REVERSED. This case is REMANDED to the Family Court for further proceedings that are consistent with this opinion.

---

**11.** The various states have applied at least three different standards to requests to modify prior custody decrees. *See generally*, J. Wexler, *Rethinking the Modification of Child Custody Decrees*, 94 Yale L.J. 757, 760–84 (1985) [hereinafter Wexler]. The first approach, the traditional approach, requires the parent seeking modification to show there has been a substantial change in circumstances making it in the child's best interests to modify custody. *See, e.g., Ryan v. Ryan*, 652 S.W.2d 313, 315–16 (Mo.Ct.App. 1983). The second approach dispenses with the necessity of showing a change in circumstances. Rather, this approach focuses upon whether it is in the child's best interests to modify custody.

*See, e.g., Friederwitzer v. Friederwitzer*, 55 N.Y. 2d 89, 447 N.Y.S.2d 893, 896, 432 N.E.2d 765, 768 (1982). Recently, there has been a movement by the courts away from the traditional approach towards the more flexible best interests of the child approach for modifying custody. *See* Wexler, 94 Yale L.J. at 765. The third approach, the one codified in the Uniform Marriage and Divorce Act at Section 409, would permit modification of custody only where the custodial parent consents or the child's health is endangered by his present environment. This approach has only been adopted by a few jurisdictions. Wexler, 94 Yale L.J. at 774.