Jennifer JONES,[1] Respondent
Below, Appellant,

v.

Lawrence LANG, Petitioner
Below, Appellee.

Supreme Court of Delaware.

Submitted: March 19, 1991.
Decided: April 12, 1991.

Kevin M. Howard of Prickett, Jones, El-
liott, Kristol & Schnee, Dover, for appel-
lant.

Joel D. Tenenbaum of Woloshin,
Tenenbaum & Natalie, P.A., Wilmington,
for appellee.

Before HORSEY, MOORE and
HOLLAND, JJ.

HORSEY, Justice:

The question presented in this appeal of
an order of Family Court is whether the
trial court's modification of a child's resi-
dential arrangement under a joint custody
decree complies with 13 *Del.C.* §§ 722 and
729. Since this action was commenced in
January 1990, the applicable statute law is
that found in 13 *Del.C.*, chapter 7, prior to
the legislative changes made by 67 *Del.
Laws*, chapter 236, effective July 15, 1990.

Jennifer Jones ("Mother") and Lawrence
Lang ("Father") are the parents of the only
child of their marriage, Amy, born Febru-
ary 7, 1983. In 1987 the parties separated
and were divorced. They share joint legal
custody of Amy under a 1987 consent or-
der. The order provides that the child's
primary residence shall be with her mother,
with Father having right of visitation over-
night one night per week and every other
weekend. The parties' marital home was,
since Amy's birth, near Dover; and follow-
ing the parties' divorce, Mother as well as
Father continued to live in the vicinity of
Dover. Mother has two children by a prior
marriage, a daughter, age 13, and a son,
age 15, both of whom lived in the marital
home until 1987. The daughter continues
to live with her mother while the son now
lives with his father in Kentucky. In 1989,
Mother and Amy and her half-sister took
up residence near Dover with Albert Hol-
lins, a divorced father of two children, ages
13 and 14, and a member of the armed
services. Mother married Hollins, later in
1989.

---

**1.** Pursuant to Supreme Court Rule 7(c), the
names of the parties and related persons are
pseudonyms selected by this Court.

In January 1990, Father petitioned Family Court in Kent County for modification of custody as to Amy's primary residence. Mother had recently informed Father that she and Amy would be moving within two months to Indiana or Kentucky, following her husband's retirement from military service. Amy was by then seven years old and in the middle of her first year of elementary school in the Capital School District. Father alleged by affidavit: that the removal of Amy from the Kent County area where she had been born and raised, and from relatives both maternal and paternal, was not in her best interest and was contrary to Amy's wishes; that Amy's mother had "created instability in [Amy's] life" by frequent changes of residence since their divorce; and that taking Amy out of state would only create further instability in her schooling and life. Following entry of a preliminary injunction against the removal of the child from Delaware without the court's authorization, Family Court, after evidentiary hearing in August 1990, granted Father's motion over Mother's opposition.

Neither parent contends that the other is not capable of caring for Amy and neither contends that the other would not provide Amy with a "good and loving relationship." Mother argued that she had been Amy's primary caretaker during the marriage because Father's employment left him few hours to be at home with Amy. Mother contended that she could provide a "family" experience that Father could not since Father now lived alone. Father countered that Mother had, over the past three years following divorce, entered into a series of live-in male relationships in households that included the children of her companions.

Mother principally relied on the testimony of a child psychiatrist, who concluded that Amy should remain with her mother through her adolescent period. The witness found Father to be overly dependent on his daughter and to harbor residual anger and resentment against his former wife.

The court directed that custody be modified, with primary placement of Amy with Father in Father's home near Dover. Permanent legal care and custody of the child was continued jointly with Mother and Father, with Mother to be provided liberal visitation, including visitation both in Delaware and with Mother, but only *after* she had established a "permanent" home. The court reserved jurisdiction to reconsider its order in the event of further change of circumstances of either party or change in needs of the child.

On appeal, Mother asserts that the trial court's order of modification entered under section 729 must be set aside for the court's failure to explicitly consider and apply each of then section 722's statutory factors.[2] Mother contends that the court gave undue weight to the child's wishes, gave no consideration to the psychiatrist's testimony, and failed to consider and apply four of the five statutory factors under section 722(a).

"This Court's standard and scope of review of an appeal from the Family Court extends to a review of the facts and law as well as to a review of the inferences and deductions made by the Trial Judge." *Solis v. Tea*, Del.Supr., 468 A.2d 1276, 1279 (1983). If the trial court has correctly applied the law, our standard of review is for abuse of discretion. *W. v. W.*, Del.Supr.,

**2.** 13 *Del.C.* § 722, as then written, provided:
**§ 722. Best interests of child.**
(a) The Court shall determine custody in accordance with the best interests of the child. In determining the best interests of the child, the Court shall consider all relevant factors including:
(1) The wishes of the child's parent or parents as to his custody;
(2) The wishes of the child as to his custodian;
(3) The interaction and interrelationship of the child with his parent or parents, his siblings and any other person who may significantly affect the child's best interests;
(4) The child's adjustment to his home, school and community; and
(5) The mental and physical health of all individuals involved.
(b) The Court shall not presume that a parent, because of his or her sex, is better qualified than the other parent to act as custodian for a child, nor shall it consider conduct of a proposed custodian that does not affect his relationship to the child.

339 A.2d 726, 727 (1975). "[T]his Court will not substitute its own opinion for the inferences and deductions made by the Trial Judge where those inferences are supported by the record and are the product of an orderly and logical deductive process." *Solis v. Tea*, 468 A.2d at 1279. *See also Wife (J.F.V.) v. Husband (O.W.V., Jr.)*, Del.Supr., 402 A.2d 1202, 1204 (1979).

In *William H.Y. v. Myrna L.Y.*, Del. Supr., 450 A.2d 406 (1982), this Court recognized an inherent inconsistency between section 729's "goal of providing stability and continuity in the child's home life" and the lodestar of a custody determination: the welfare and best interests of the child. *Id.* at 409–410. *William H.Y.* held that the latter should take precedence over the countervailing criteria of subsection (3) of section 729(b): that the court "shall retain the custodian established under a prior decree unless:"

> (3) The child's present environment endangers his physical health or significantly impairs his emotional development and the harm likely to be caused by a change of environment is outweighed by the advantage of a change to the child.

13 *Del.C.* § 729(b)(3). In *Friant v. Friant*, Del.Supr., 553 A.2d 1186 (1989), this Court resolved the statutory inconsistency. We ruled that a petition to modify a custody decree brought more than two years later shall be "decided according to the best interests of the child, in accordance with standards set forth in Section 722." *Id.* at 1191.

The effect of *Friant* is to relieve a petitioner seeking a custody modification beyond the two-year period of "the burdens imposed by" subsection (b) of section 729. Modification of a custody decree in force for over two years hinges on application of the statutory factors of section 722. Thus, our statutory scheme recognizes "that the factors ... determinative in a prior custody decision [of more than two years' duration] are susceptible to change" and that a petition for modification provides "an opportunity for [re-examination of a custody award based on the predominant concern of a child's best interests]." *Friant*, 553 A.2d at 1191.

■ The dispute here is not over the evolving Delaware law, but over its application to the facts and whether the trial court's order of modification should be found to comply with section 722's prerequisites. From the hearing testimony, the court summarized its findings and explained its ruling in the following fashion:

> The Court has conferred with the minor child in chambers twice this date, and both times she has stated without hesitation that she wants to reside with her father. The child was born and raised in this area, and has many relatives, both maternal and paternal, residing in this area also. The child is intelligent and well-spoken, and the Court believes that she is old enough to be aware of the situation, and quite capable of expressing her wishes.

> In addition, the Court has reviewed the evidence presented, being a letter from the natural mother to the natural father advising that she planned to move to Kentucky in February or March, 1990 and that he might want to file for an emergency visitation hearing, a letter from Capital School District advising that the child is eligible for acceptance in the Talent Program for academically talented elementary students in the forthcoming school year, and numerous pictures showing the home of the father and some of the child's activities while with him. All exhibits were submitted by the natural father.

> The Court also heard testimony, via a telephone conference set up on speaker telephones for all parties to hear, from Dr. Paula Malone, child psychiatrist. Further, a report has been submitted to the Court concerning allegations of possible abuse of the child by the mother's present husband indicating that the allegations were unfounded.

> Information and testimony before the Court indicates that both parents are equally capable of caring for this minor child. The statute states that the court shall consider the wishes of a child if the

child is capable of expressing an opinion. On two occasions the child has made it very plain that she does not want to leave the State of Delaware.

The Court must choose between the circumstances of the parents. Their situations are totally different. The natural father has an established home, and the natural mother is moving first to Indiana and then hopes to establish a permanent home in Kentucky within a very short period of time. The mother asks the Court to send the child with her, even though her present circumstances are somewhat unsettled. Even if the present situation of both parents were the same, the child's preference is given weight. So that there can be no misunderstanding, the Court questioned the child on two occasions, and the second time she made it very specific that she wanted to reside with her father in the State of Delaware and visit with her mother.

After a careful reading of the record and the decision below, we conclude that the trial court's decision should be affirmed. We find no error of law or abuse of discretion; and we conclude that the trial court's findings, deductions and conclusions are the product of an orderly and logical deductive process. Notwithstanding the trial court's failure to make explicit reference to the controlling statutory factors of section 722, we think that a fair reading of the decision below demonstrates implicit application of the statutory factors in the court's effort to reach a decision on modification that accords with the best interests of the child.

We do not read the court's decision as, in Mother's words, "disregarding" the opinion testimony of the psychiatrist. The court was not required to accept her testimony that Amy was "incapable" of making a considered choice concerning her residential arrangements. A trial court may determine the weight and credibility to be accorded the testimony of any witness, including an expert. *Wife (J.F.V.)*, 402 A.2d at 1204.

Mother's assertion that the trial court's finding that Amy's ability to make a considered choice between her parents lacks any evidentiary basis is not borne out by the record. We refer to the court's characterization of Amy as "intelligent and well-spoken, and ... old enough to be aware of the situation, and quite capable of expressing her wishes." While it would have been clearly preferable for the court to explicitly refer to section 722's statutory factors, we cannot find that the court disregarded factors (3), (4) and (5) of section 722. The court frankly recognized that the decision confronting it was a close one involving "parents who are equally capable" and whose "circumstances ... are totally different."

Finally, we think the court was well within its discretion and correct as a matter of law in basing its ultimate decision on a finding that a change of placement would more likely result in greater stability in Amy's life, both for the present and the immediate future. It seems to us the court was, under the peculiar circumstances of this case, able to reconcile section 729's goal of "stability and continuity" with section 722's lodestar of the child's best interests. *William H.Y.*, 450 A.2d at 409–410.

\* \* \*

Affirmed.