IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| BRETT SULLIVAN,[1] | § | |
| | § | No. 258, 2014 |
| Respondent Below, | § | |
| Appellant, | § | Court Below—Family Court of |
| | § | State of Delaware in and for |
| v. | § | New Castle County |
| | § | |
| JANET SULLIVAN, | § | File No. CN11-02708 |
| | § | Pet. Nos. 11-14734, 12-06308, |
| Petitioner Below, | § | 12-06917, 12-18101, 12-32576, |
| Appellee. | § | 13-01977, 13-17820 |

Submitted: February 6, 2015
Decided:  April 21, 2015

Before **STRINE**, Chief Justice, **VALIHURA** and **VAUGHN**, Justices.

### ORDER

This 21st day of April 2015, upon consideration of the parties' briefs and the Family Court record, it appears to the Court that:

(1)  The parties, Brett Sullivan (hereinafter "Husband") and Janet Sullivan (hereinafter "Wife") were divorced in September 2011 after a marriage of nearly thirteen years. The Family Court retained jurisdiction to decide ancillary issues, conducting a hearing on October 1, 2012, February 22 and 25, 2013, and August 13, 2013. At the conclusion of the four-day hearing, the court directed the parties to submit post-hearing memoranda on

---

[1] By Order dated May 20, 2014, the Court *sua sponte* assigned pseudonyms to the parties. Del. Supr. Ct. R. 7(d).

Wife's alleged cohabitation. Thereafter, by orders dated December 30, 2013 and April 16, 2014, the Family Court divided the parties' assets and debts and ruled on matters of alimony, custody and visitation, child support, and attorneys' fees and costs.[2] Husband appealed.

(2) In an appeal from the Family Court, this Court reviews the facts and the law as well as the inferences and deductions made by the court.[3] We review conclusions of law *de novo*, but if the court has correctly applied the law our standard of review is abuse of discretion.[4] When the Family Court's determination of facts turns upon the credibility of witnesses who testified under oath, this Court will not substitute its opinion for that of the trial judge.[5] Moreover, we will not disturb findings of fact unless they are clearly wrong and justice requires that they be overturned.[6]

(3) Husband has raised the following five claims on appeal: first, the Family Court did not properly assess Wife's earning capacity; second, the Family Court erred when modifying the division of Husband's non-pension retirement accounts; third, the Family Court erred when determining

---

[2] *J.S. v. B.S.*, 2013 WL 9605961 (Del. Fam. Ct. Dec. 30, 2013); *J.S. v. B.S.*, 2014 WL 4267441 (Del. Fam. Ct. April 16, 2014).

[3] *Forrester v. Forrester*, 953 A.2d 175, 179 (Del. 2008).

[4] *Id.*

[5] *Wife (J.F.V.) v. Husband (O.W.V.)*, 402 A.2d 1202, 1204 (Del. 1979).

[6] *Forrester v. Forrester*, 953 A.2d 175, 179 (Del. 2008).

2

custody and visitation; fourth, the Family Court did not credit Husband for alimony payments; and fifth, the Family Court erred when determining attorneys' fees and costs. For the reasons that follow, we affirm in part, reverse in part, and remand to the Family Court for further proceedings consistent with this Order.

(4) Husband's first and second claims on appeal concern the Family Court's division of the parties' assets and debts. When determining how to divide marital property, the court considers factors enumerated in 13 *Del. C.* § 1513.[7]

---

[7] 13 *Del. C.* § 1513 states in pertinent part:

(a) In a proceeding for divorce or annulment, the Court shall, upon request of either party, equitably divide, distribute and assign the marital property between the parties without regard to marital misconduct, in such proportions as the Court deems just after considering all relevant factors including:

(1) The length of the marriage;

(2) Any prior marriage of the party;

(3) The age, health, station, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties;

(4) Whether the property award is in lieu of or in addition to alimony;

(5) The opportunity of each for future acquisitions of capital assets and income;

(6) The contribution or dissipation of each party in the acquisition, preservation, depreciation or appreciation of the marital property, including the contribution of a party as homemaker, husband, or wife;

(7) The value of the property set apart to each party;

3

(5)     The record reflects that, at the outset of the ancillary hearing, the parties' counsel discussed with the court the matters upon which the parties agreed, including the division of deferred marital assets, namely Husband's non-pension retirement accounts and pension benefits. Through their respective counsel, the parties agreed that Husband's non-pension retirement accounts should be divided as the court determined for all other marital assets, and that Husband's pension benefits should be divided 50%-50% using the *Cooper* formula.[8]

(6)     In its order of December 30, 2013, the Family Court determined that a "fair and equitable division" of the parties' assets was 70%-30% in Wife's favor, and that the parties' debts should be divided in the reverse percentage of 30%-70%. However, the court did not include Husband's non-pension retirement benefits in the 70/30 division of assets, as the parties had agreed at the outset of the ancillary hearing on October 1, 2012. Rather,

(8)  The economic circumstances of each party at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the party with whom any children of the marriage will live;

(9)  Whether the property was acquired by gift, except those gifts excluded by paragraph (b)(1) of this section;

(10) The debts of the parties; and

(11) Tax consequences.

[8] The method of dividing pension benefits referred to as the Cooper formula was approved by this Court in *Jerry L.C. v. Lucille H.C.*, 448 A.2d 223, 225-26 (Del. 1982).

the court ruled that the non-pension retirement benefits would be divided 50/50. When Wife brought the matter to the court's attention in a motion for reargument, the court corrected and modified the December 30, 2013 order to provide that Husband's non-pension retirement accounts would be divided 70/30, in accordance with the parties' agreement.[9]

(7) In his first claim on appeal, Husband takes issue with the 70/30 division and contends that the Family Court did not properly assess Wife's earning capacity under 13 *Del. C.* 1513. Husband's claim is without merit. When arriving at the 70/30 division, the court found that "[t]he length of the parties' marriage, high disparity in the parties' income, and disparity in future earning potential warrant[ed] Wife receiving a significantly greater percentage of the marital estate."[10] The court's ruling reflects due consideration of the factors under 13 *Del. C.* § 1513(a). On appeal, Husband has failed to identify any factual findings or inferences that are clearly wrong or any errors of law.

(8) In his second claim on appeal, Husband contends that, when the Family Court modified the division of his non-pension retirement accounts, he "was subjected to [a] major financial loss" that the court should have

[9] *J.S. v. B.S.*, 2014 WL 4267441, at *4 (Del. Fam. Ct. April 16, 2014).

[10] *J.S. v. B.S.*, 2013 WL 9605961, at *9 (Del. Fam. Ct. Dec. 30, 2013).

5

corrected. Husband's claim is without merit. Husband had agreed that his non-pension retirement accounts should be divided as the court determined for all other marital assets.

(9) Husband's third claim on appeal concerns the Family Court's rulings on custody and visitation. The parties litigated custody and visitation on the last day of the ancillary hearing and called a total of seven witnesses, including the children's therapist and a licensed clinical social worker who conducted court-ordered co-parenting sessions with the parties.

(10) The record reflects that the parties entered into a temporary stipulation and order of custody on August 1, 2012 (hereinafter "temporary stipulation"). Under the temporary stipulation, the parties agreed to joint legal custody of the children, primary placement with Wife and weekly overnight visitation with Husband. The temporary stipulation also included a holiday and school break custody schedule. At the ancillary hearing, Wife testified that she wanted to continue, and to make permanent, the order of custody and visitation under the temporary stipulation. Husband testified that he wanted to have shared residential placement of the children with holiday and school breaks as provided under the temporary stipulation.

(11) Under Delaware law, the Family Court is required to determine legal custody and residential placement in accordance with the best interests

of the child.[11] The criteria for determining the best interests of a child are set forth in 13 *Del. C.* § 722.[12] In this case, when making its custody and visitation determination, the Family Court concluded as follows:

> After considering all relevant factors, the Court finds that it is in the best interest of the children for Husband and Wife to have joint legal custody of the children and for primary residence of the children to be with Wife. While it is clear that both parents love and nurture the [c]hildren, factor three (3) of 13 *Del. C.* § 722 favor[s] Wife's position to maintain [the] *status quo* in custody and visitation. Accordingly, the custody and visitation schedule shall continue as outlined in [the] August 1, 2012 Temporary Stipulation. Father shall enjoy two consecutive overnight visitation days per week on days he is off from work.[13]

(12) On appeal, Husband "questions" the Family Court's placement of the children with Wife, alleging that Wife's "drug offense," "adjustment disorder," and live-in boyfriend's "criminal history," warranted Husband having shared placement. We disagree. The record reflects that the Family Court thoughtfully and thoroughly considered the best interest factors and made appropriate findings as to each. Husband has failed to identify any

---

[11] *Friant v. Friant*, 553 A.2d 1186, 1190 (Del. 1989) ("The long established rule in Delaware is that the best interests of the child is the primary concern in matters of custody.").

[12] 13 *Del. C.* § 722(a) (listing best interest factors).

[13] *J.S. v. B.S.*, 2013 WL 9605961, at *16 (Del. Fam. Ct. Dec. 20, 2013).

basis upon which to disturb the factual findings of the Family Court and no errors of law.

(13) Husband's fourth claim on appeal concerns the Family Court's ruling on his motion to terminate alimony. Husband sought to terminate alimony on the basis of Wife's alleged cohabitation. Under 13 *Del. C.* § 1512(g), "the obligation to pay future alimony is terminated upon the . . . cohabitation of the party receiving alimony."[14]

(14) The record reflects that Wife filed a motion for relief seeking interim alimony in February 2012. The Family Court granted Wife's motion in March 2012 and ordered that Father make monthly interim alimony payments to Wife beginning in April 2012. In October 2012, Husband filed a motion to terminate the interim alimony claiming that Wife was "cohabiting with her boyfriend" and had been doing so since early 2012, before she filed the motion for relief.

(15) The parties litigated the cohabitation issue on the second, third and fourth days of the ancillary hearing and called a total of seven witnesses. In its order of December 30, 2013, after concluding that the evidence was "overwhelming that Wife began cohabiting with [her boyfriend] during the summer and fall of 2012," the Family Court terminated Wife's interim

---

[14] 13 *Del. C.* § 1512(g).

8

alimony "effective November 1, 2012, as the evidence clearly show[ed] that Wife was cohabiting by this point in time."[15]

(16) On appeal, Husband claims that the Family Court erred when it terminated alimony "effective November 1, 2012" when the court had found that "Wife began cohabiting with [her boyfriend] during the summer and fall of 2012." The Court agrees that Husband is entitled to credit for any alimony paid after Wife began cohabiting. In its December 30, 2013 order, the Family Court found that Wife's cohabiting began "during the summer . . . of 2012." Therefore, to the extent the Family Court terminated alimony "effective November 1, 2012," the court's ruling is reversed. This matter will be remanded to the Family Court to determine when, during the summer of 2012, Wife began cohabiting, and to credit Husband for alimony paid after that date.

(17) Husband's fifth claim on appeal concerns the Family Court's determination of the parties' requests for attorneys' fees and costs. The Family Court has broad discretion when deciding whether to award attorneys' fees and costs.[16]

---

[15] *J.S. v. B.S.*, 2013 WL 9605961, at *14 (Del. Fam. Ct. Dec. 30, 2013).

[16] *Thomas v. Thomas*, 102 A.3d 1138, 1150 (Del. 2014).

(18) Husband requested attorneys' fees and costs relating to his motion to terminate alimony. Wife sought attorneys' fees and costs that she accrued over the course of the ancillary proceeding. In its April 16, 2014 order, the Family Court ruled that Wife was responsible for Husband's attorneys' fees and costs related to prosecuting the motion to terminate alimony and awarded Husband $26,608.75. The court further ruled that Husband was responsible for Wife's attorneys' fees and costs, excluding those related to Wife's defense of the motion to terminate alimony, and awarded Wife $41,240.67.

(19) Husband challenges the Family Court's determination of attorneys' fees and costs in three respects. First, Husband claims that Wife's counsel did not submit an "itemized statement of services rendered," as required by Family Court Civil Rule 88(2).[17] Second, Husband claims that he should not have to pay the attorneys' fees and costs that Wife incurred when opposing his motions to compel cohabitation-related discovery. Third, Husband identifies a math error in the Family Court's calculation of the amount of attorneys' fees and costs that Wife owes Husband.

(20) Husband is correct that the Family Court made a math error when totaling $13,230, $3,500 and $11,875.73, the fees and costs the court

---

[17] *See* Del. Fam. Ct. Civil R. 88 (governing allowance of attorneys' fees; expenses and services).

10

found were reasonably related to Husband's motion to terminate alimony. In its April 16, 2014 order, on pages 15 and 18, the court erroneously stated that the total is $26,608.75. The correct total is **$28,605.72**. This matter will be remanded to the Family Court for correction of the total amount Wife owes Husband for attorneys' fees and costs. In all other respects, however, the Court concludes that the Family Court properly determined the parties' requests for attorneys' fees and costs.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Family Court is AFFIRMED in part, REVERSED in part, and REMANDED to the Family Court for further proceedings consistent with this Order. Jurisdiction is not retained.

BY THE COURT:

_____
Justice

11