IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| BETSY E. KING,[1] | § | |
| | § | |
| Petitioner Below- | § | No. 29, 2015 |
| Appellant, | § | |
| | § | |
| v. | § | Court Below—Family Court |
| | § | of the State of Delaware, |
| SCOTT S. BOOKER, | § | in and for Kent County |
| | § | File No. CK14-02067 |
| Respondent Below- | § | Petition No. 14-19313 |
| Appellee. | § | |

Submitted:  June 5, 2015
Decided:  August 20, 2015

Before **VALIHURA**, **VAUGHN**, and **SEITZ**, Justices.

## ORDER

This 20th day of August 2015, upon consideration of the appellant's opening brief and the *amicus curiae* brief filed by the Delaware Coalition Against Domestic Violence,[2] it appears to the Court that:

(1)    The appellant, Betsy King, filed this appeal from a decision of the Family Court dated October 20, 2014, which vacated a Commissioner's Protection From Abuse ("PFA") order dated August 5, 2014.  King also appeals the Family Court's order dated December 31, 2014, which denied her motion for reargument.  After consideration of the briefs on appeal and

---

[1] The Court previously assigned pseudonyms to the parties under Supreme Court Rule 7(d).

[2] The appellee did not file an answering brief.

the record below, we hold that the Family Court erred in concluding that King had failed to prove that the appellee, Scott Booker, had committed an act of abuse as defined by the PFA statute. Accordingly, we reverse the Family Court's judgment.

(2) King filed her PFA petition in July 2014. A hearing was held on August 5, 2014 before the Family Court Commissioner. The testimony from that hearing reflects that King and Booker are the parents of two minor children but have never been married to each other. On July 7, 2014, the parties jointly rented a home together in Frederica, Delaware. Because of his long commute to his job in New Jersey, Booker usually only stayed with the family on Sundays. On July 13, 2014, King asked Booker to move out of the home. Booker took some of his belongings and moved in with his paramour. Later that day, King put more of Booker's belongings outside the residence and sent him a text message telling him so. Booker returned and retrieved the items without incident. The same day, King (unbeknownst to Booker) changed the lock on the front door, although she did not change the deadbolt.

(3) On July 20, 2014, the parties had an argument about Booker's visitation with the children. Booker told King that he would not be coming for visitation. King testified that she promptly gathered the children and

2

drove to her mother's house in Dover. While en route, King received a text message from Booker, stating "On my way." King did not respond. She and the children spent the night at her mother's house. When King returned home the next day, she unlocked the deadbolt, which caused the front door to open on its own. She could see that the door had been forcibly opened because the lock on the door handle was still in a locked position and the wood on the door jamb was splintered. Upon inspecting the premises, she found several items missing, including a television and stand, a gaming system and games, a grill, some scarves, a handbag and wallet, a bracelet, a chess set, and some photographs. She also discovered that a file cabinet had been damaged.

(4)   Booker testified at the PFA hearing that he went to the house on July 20, 2014. When he knocked and discovered that no one was home, he unlocked the deadbolt and then attempted to unlock the door lock. Upon realizing that the lock had been changed, Booker testified that he kicked in the door. He admitted taking some items, including the television and stand, the gaming system and games, the scarves, the handbag, the chess set, and the photographs. Booker asserted that the items either were gifts that he had given King, gifts that King had given him, or items that he had purchased for himself. He denied breaking into the filing cabinet but admitted that the

3

cabinet bent when he opened the drawer because of the weight of all the items on top of it.

(5) At the end of the hearing, the Commissioner concluded that, given Booker's admissions about kicking in the door and taking items from the home, he had engaged in conduct that constituted "abuse" under Delaware law. The Commissioner granted the relief requested by King including a two-year PFA order, exclusive use and possession of the residence, exclusive use and possession of a Volkswagen Jetta, primary residential custody of the children, and child support.[3] In addition to the relief sought by King, the Commissioner also ordered Booker to undergo a domestic violence evaluation and to follow any recommendations for treatment. Booker filed a timely request for review of the Commissioner's order.

(6) Upon *de novo* review of the Commissioner's order and the record, the Family Court judge rejected the Commissioner's order and directed the PFA order to be vacated. Among other things, the Family Court found that the Commissioner had improperly shifted the burden to Booker to prove that his conduct was reasonable. After reviewing the record, the Family Court concluded that King had failed to satisfy her burden of proving

---

[3] The custody, visitation, and support rulings were all made on a temporary basis, as the parties were pursuing separate petitions on those matters.

4

either of her allegations of domestic abuse.[4] First, the Family Court concluded that Booker's "act of kicking in the door was not an act of abuse because a reasonable person in [King's] shoes would not have felt threatened or harmed."[5] Second, the Family Court concluded that Booker's removal of items from the home did not constitute an act of abuse because King "failed to prove that [Barnes] had no property interests in the items"[6] that he took. King filed a motion for reargument, which the Family Court denied. This appeal followed.

(7) King enumerates four issues in her opening brief on appeal. First, she contends that the Family Court erred in concluding that she did not suffer an act of abuse under the statute. Second, she contends that the Family Court erred in placing on her burdens that are not permissible under Delaware law. Third, she contends that the Family Court erred in holding that Commissioner impermissibly shifted the burden of proof to Booker. Finally, she contends that the Family Court erred in reviewing issues that Booker did not object to in his request for review of the Commissioner's order.

---

[4] The first alleged act of abuse was Booker's act of kicking in King's front door. The second alleged act of abuse was Booker's removal of items from the home.

[5] *King v. Booker*, File No. CK14-02067, Pet. No. 14-19313, at 6 (Del. Fam. Ct. Oct. 20, 2014).

[6] *Id.* at 8.

(8) The *amicus curiae*, Delaware Coalition Against Domestic Violence ("the Coalition"), filed a brief raising three issues. First, the Coalition contends that the Family Court erred in concluding that the Commissioner had impermissibly shifted the burden of proof to Booker. Second, the Coalition contends that the Family Court erred in concluding that an act of abuse had not occurred. Finally, the Coalition contends that the Family Court's decision undermines best practices employed in domestic violence cases, including the changing of locks and ordering domestic violence evaluations for those who have committed an act of abuse.

(9) When a party files a timely request for review of a Commissioner's order, a Family Court judge must conduct an independent, *de novo* review of the record in order to determine whether the portions of the Commissioner's order to which an objection has been raised should be accepted, rejected, or modified in whole or in part.[7] This Court's standard of review in an appeal from the Family Court judge's order extends to a review of the facts and the law as well as to the inferences and deductions made by the judge.[8] Issues of law are reviewed *de novo*.[9] But if the issues on appeal

---

[7] *Palmer v. Goodman*, 2010 WL 376905, *2 (Del. Jan. 15, 2010) (citing 10 *Del. C.* § 915(d)(1)).

[8] *Wife (J.F.V.) v. Husband (O.W.V., Jr.)*, 402 A.2d 1202, 1204 (Del. 1979).

[9] *In re Heller*, 669 A.2d 25, 29 (Del. 1995).

6

implicate rulings of fact, we conduct a limited review of the factual findings to assure that they are sufficiently supported by the record and are not clearly wrong.[10] If the Family Court has correctly applied the law, our standard of review is abuse of discretion.[11]

(10) Under 10 *Del. C.* § 1041(1), "abuse" is defined to include many different types of conduct and is not limited to physical violence. As the Family Court noted, a single act may fall into more than one category of "abuse" under Section 1041(1).[12] Among other things, "abuse" includes "[i]ntentionally or recklessly damaging, destroying or taking the tangible property of another person."[13]

(11) In this case, the evidence was not contradicted. Booker's own testimony at the PFA hearing established that he intentionally kicked in the locked front door of a rental property and took property, including property that either he or his father had given to King as gifts. Under the circumstances, the Family Court Commissioner did not err in concluding that King had established by a preponderance of the evidence that Booker

---

[10] *Swanson v. Davis*, 2013 WL 3155827, *2 (Del. June 20, 2013).

[11] *Jones v. Lang*, 591 A.2d 185, 186 (Del. 1991).

[12] *King v. Booker*, File No. CK14-02067, Pet. No. 14-19313, at 4 (Del. Fam. Ct. Oct. 20, 2014).

[13] 10 *Del. C.* § 1041(1)c.

7

had committed an act of abuse under the statute.[14] Given this holding, we need not address whether the Family Court erred in ruling that King had not established an act of abuse under Section 1041(1)h.[15]

NOW, THEREFORE, IT IS ORDERED that the judgment of the Family Court vacating the Commissioner's PFA order is REVERSED. The matter is remanded with instructions for the Commissioner's PFA order dated August 5, 2014 to be reinstated

BY THE COURT:

_____
Justice

---

[14] 10 *Del. C.* 1044(b) (providing that the burden of proof in a PFA hearing is a "preponderance of the evidence" standard).

[15] 10 *Del. C.* § 1041(1)h provides an act of "abuse" includes "[a]ny other conduct which a reasonable person under the circumstances would find threatening or harmful."