BARRY GREEN,[1] Petitioner Below-Appellant,
v.
KAREN GREEN, Respondent Below-Appellee.
No. 29, 2008
Supreme Court of Delaware
Submitted: October 16, 2008
Decided: October 27, 2008
Before BERGER, JACOBS and RIDGELY, Justices.

ORDER
Jack B. Jacobs, Justice.
This 27th day of October 2008, upon consideration of the briefs on appeal, the record below, and the Family Court's October 16, 2008 report following remand,[2] it appears to the Court that:
(1) The petitioner-appellant, Barry Green ("Father"), filed an appeal from the Family Court's December 21, 2007 order on the cross petitions for custody filed by him and the respondent-appellee, Karen Green ("Mother").[3] We find no merit to the appeal. Accordingly, we affirm.
(2) The record, including the 225-page transcript of the custody hearing, reflects the following. The parties were married on June 29, 1995 and were divorced on August 29, 2006. There was one child born of the marriageBilly, now seven years old. When the parties separated in January 2003, Billy resided with Mother while Father had visitation. In mid-2006, following an incident involving Mother, Father received temporary custody of Billy. Subsequently, Mother was granted visitation. In 2006, both Mother and Father filed custody petitions requesting primary residential custody, with visitation for the other parent. The custody hearing took place on June 12, 2007. Mother, who was pro se, and Father, who was represented by counsel, both testified. Other witnesses who testified were Mother's boyfriend, Mother's boyfriend's daughter, Billy's daycare provider, Billy's teacher, and Billy's paternal and maternal grandmothers. Because of Billy's young age, the Family Court declined to interview him.
(3) Father is 32 years old and works in building maintenance in Columbia, Maryland. He lives alternately with his parents in New Castle County, Delaware, and with his girlfriend in Columbia, Maryland. He works Monday through Friday from 7:00 a.m. until 3:00 p.m. Although Father testified that he sees Billy every day, there was evidence that Father stays with his girlfriend most days during the week and that, ever since Father was granted temporary custody of Billy, Father's parents have been primarily responsible for getting Billy dressed, fed and transported to and from school or daycare. During the parties' marriage, Father provided financial support for the family. However, after the parties separated, Father failed to provide financial support, which created economic hardship for Mother. Father has demonstrated more parental involvement with Billy since being awarded temporary custody.
(4) Mother is 33 years old and is employed full-time with a dental practice. She lives in New Castle County, Delaware, with her boyfriend and her 16 year-old daughter from a previous relationship. Her boyfriend's son also visits every other weekend. Mother disapproves of the fact that Father's parents, rather than Father, are primarily responsible for taking care of Billy. She also disapproves of the day care Father has arranged for Billy. She stated that she has witnessed drinking outside the day care and that the day care lacks an appropriate educational environment. Mother also stated that she encouraged Father to arrange counseling for Billy during the time Father had temporary custody, but that Father failed to do so.
(5) Mother's boyfriend and daughter testified that they have a strong bond with Billy and that Billy enjoys playing with Mother's boyfriend's son, with whom he shares a bedroom. Billy's daycare provider, who cares for Billy after school and full-time during the summer, testified that Billy gets along well with both parents. Billy's kindergarten teacher testified that he is well adjusted and meets grade expectations.
(6) Both parents are in good physical health. Mother previously was diagnosed with depression stemming from her divorce from Father and the loss of the family home. However, a psychological evaluation performed by Joseph J. Nadel, Ph.D., shows that her testing scales are within normal limits and that she has no problems in the areas of substance abuse or impulse control.
(7) In May 2006, a disturbing incident occurred. Father picked up Billy from Mother's house and noticed marks on his face and body. When he asked Mother what happened, Mother responded that Billy had climbed on the roof and she had punished him by hitting him with a belt. Although Father testified that he was very upset by the incident, the record reflects that he waited at least five hours before taking him to the emergency room for treatment. After discussing the matter with his mother, Father reported the incident to the authorities and filed for emergency custody in the Family Court. The Division of Family Services investigated the incident and Mother was arrested and charged with Assault in the Second Degree. She pleaded guilty to Assault in the Third Degree and Endangering the Welfare of a Child.
(8) Mother testified that, on the day of the incident, she was in the kitchen and had just finished making Billy's lunch when she looked out the door and saw his legs dangling from the roof. According to Mother, Billy had just been in the kitchen with her less than a minute before. Apparently, Billy had gone upstairs to his sister's room, opened the window and climbed out on the roof, as he had seen his sister do in the past. Mother rushed upstairs, grabbed a belt lying on the stairs, went out on the roof through the open window, grabbed Billy, brought him inside and hit him with the belt. Photographs of Billy taken on the day of the incident show several marks on his body.
(9) The Family Court issued a Protection from Abuse order ("PFA") against Mother in connection with the incident. At trial, Mother presented evidence that she had enrolled in and completed counseling with Christiana Counseling and Psychiatric Associates as well as Child, Inc., and had participated in an intensive anger management program. Mother testified that, through counseling, she now understands that she was going through a difficult period financially and emotionally, was depressed and overwhelmed, and was terrified by seeing her son on the roof. Mother testified that this was the first time she had hit either of her children, and that counseling has provided her with the tools to prevent a similar reaction in the future.
(10) In September 2007, after Father had been granted temporary custody of Billy, the Family Court issued a PFA against him as the result of acts of domestic violence against Mother. The acts of domestic violence consisted of excessive telephone calls to Mother's home and workplace, as well as to maternal grandmother's home. Father's actions were found to be harassing in nature, causing Mother alarm. In addition to imposing "no contact" conditions, the Family Court ordered Father to complete domestic violence intervention counseling.
(11) In his appeal, Father claims that the Family Court did not properly weigh the eight best interests factors and should have accorded greater weight to the incident of abuse of Billy and to Mother's history of depression.
(12) The Family Court must "determine the legal custody and residential arrangements for a child in the best interests of the child" by evaluating "all relevant factors," including the eight factors set forth in the custody statute.[4] The statute provides a rebuttable presumption against granting custody or residence of a minor child to a perpetrator of domestic violence.[5] The statute also provides that the presumption "shall be overcome" if there have been no further acts of domestic violence and the perpetrator has a) successfully completed a program of evaluation and counseling designed specifically for perpetrators of family violence and conducted by a private or public agency or a certified mental health professional; b) successfully completed a program of alcohol or drug abuse counseling, if appropriate; and c) demonstrated that giving custodial or residential responsibilities to the perpetrator is in the best interests of the child.[6]
(13) This Court's review of appeals from the Family Court extends to a review of the facts and the law, as well as a review of the inferences and deductions made by the judge.[7] This Court will not disturb findings of fact unless they are clearly wrong and justice requires that they be overturned.[8] If the Family Court has correctly applied the law, the standard of review is abuse of discretion.[9] Errors of law are reviewed de novo.[10]
(14) In its December 21, 2007 decision and order, the Family Court reviewed the evidence adduced at the hearing regarding the eight statutory best interests factors. In essence, the Family Court found that both parents loved Billy and were concerned about his welfare, but that Mother historically had been the more consistent and involved parent. In addition, the Family Court determined that the presumption against an award of custody of a minor child to a perpetrator of domestic violence had been rebutted by Mother's completion of several counseling programs and her positive evaluation by a psychologist. Although the Family Court was deeply disturbed by Mother's inappropriate reaction to Billy's climbing on the roof, the Court, nevertheless, was persuaded that the incident was an isolated one, indicative of Mother's circumstances at that time and not of her character. Likewise, the Family Court noted that Mother's only criminal convictions stemmed from that one isolated incident.
(15) As reflected in its report following remand, while the Family Court found that Father's acts of domestic violence warranted the issuance of a PFA, it did not find Father to be a "perpetrator of domestic violence," since he had not committed any statutory criminal offense.[11] Based on its findings, the Family Court awarded legal custody of Billy jointly to Mother and Father, primary residence to Mother during the academic school year, with visitation to Father, and primary residence to Father during the summer months, with visitation to Mother.
(16) We have reviewed the record in this case carefully. While we, too, are disturbed by the incident with Mother, we nevertheless conclude that the Family Court grappled with the thorny issues presented by this case appropriately, and that it properly determined that the presumption of § 705A had been rebutted. Moreover, the Family Court acted within its discretion in accepting Dr. Nadel's expert opinion that Mother has no mental health issues at this time. We conclude also that the Family Court's decision to award primary residential custody to Mother during the school year is supported by evidence that Mother has historically been the more consistent and involved parent. Finally, the Family Court's decision to award Father primary residential custody during the summer months was supported by the de minimis nature of Father's acts of domestic violence as well as his completion of domestic violence counseling. In the absence of any abuse of discretion or error of law, we conclude that the judgment of the Family Court must be affirmed.
NOW, THEREFORE, IT IS ORDERED that the judgment of the Family Court is AFFIRMED.
NOTES
[1] This Court sua sponte assigned pseudonyms to the parties by Order dated March 14, 2008. Supr. Ct. R. 7(d).
[2] By Order dated September 16, 2008, the Court remanded this matter to the Family Court for further findings in support of its December 21, 2007 custody decision.
[3] The Family Court also dismissed a petition for a rule to show cause filed by Mother against Father.
[4] Del. Code Ann. tit. 13, § 722(a). These factors are: 1) the wishes of the child's parents; 2) the wishes of the child; 3) the interaction of the child with the parents and other household members; 4) the child's adjustment to his home, school and community; 5) the mental and physical health of all individuals involved; 6) compliance by the parents with their rights and responsibilities to the child; 7) evidence of domestic violence; and 8) the criminal history of the parties.
[5] Del. Code Ann. tit. 13, § 705A.
[6] Id.
[7] Wife (J.F.V.) v. Husband (O.W.V., Jr.), 402 A.2d 1202, 1204 (Del. 1979).
[8] Solis v. Tea, 468 A.2d 1276, 1279 (Del. 1983).
[9] Jones v. Lang, 591 A.2d 185, 186 (Del. 1991).
[10] In re Heller, 669 A.2d 25, 29 (Del. 1995).
[11] Del. Code Ann. tit. 13, § 703A(b).