Jacob A. **HARMON, III, Respondent Below, Appellant,**

v.

Keri M. **HARMON, Petitioner Below, Appellee.**

No. 116, 2008.

Supreme Court of Delaware.

Submitted: Nov. 5, 2008.

Decided: Nov. 20, 2008.

---

Andrew W. Gonser, Esquire and Nancy Y. Gorman, Esquire, Gonser and Gonser, P.A., Wilmington, for appellant.

Gerald I. Street, Esquire, Rebecca S. Beste, Esquire and Mitchell W. May, Esquire, Street & Ellis, P.A., Dover, for appellee.

Before STEELE, Chief Justice, HOLLAND and RIDGELY, Justices.

HOLLAND, Justice:

The respondent-appellant, Jacob A. Harmon, III (the "Husband"), appeals from the Kent County Family Court's decision of February 7, 2008 resolving ancillary issues incident to the divorce of the Husband and petitioner-appellee, Keri M. Harmon (the "Wife"). The Husband contends that in ordering the division of the marital estate, the Family Court failed to consider properly all of the factors enumerated in Del.Code Ann. tit. 13, § 1513(a). Specifically, the Husband argues that the Family Court erred by failing to consider the factors contained in sections 1513(a)(6) [1], (a)(11) [2], (a)(4) [3], and (a)(3) [4]. We find mer-

---

**1.** Del.Code Ann. tit. 13, § 1513(a)(6) requires the court to consider, upon request, "[t]he contribution or dissipation of each party in the acquisition, preservation, depreciation or appreciation of the marital property, including the contribution of a party as homemaker, husband, or wife."

**2.** Del.Code Ann. tit. 13, § 1513(a)(11) requires the court to consider, upon request, "[t]ax consequences."

**3.** Del.Code Ann. tit. 13, § 1513(a)(4) requires the court to consider, upon request, "[w]heth-

it in the Husband's argument under section 1513(a)(6). Therefore, this matter is remanded to the Family Court for consideration of the Husband's premarital assets, inheritances, and post-separation contributions.

### Facts and Procedural History

The parties were married on December 16, 1989, separated within the household on July 31, 2002, and divorced on February 17, 2004. The Husband and the Wife, along with their three children, resided in the same household after their date of separation until November 18, 2004, when the Husband was incarcerated.[5]

The Wife, forty-two years old at the time of the hearing, is in good health and, since June 2004, has worked for the State of Delaware Insurance Department, earning approximately $43,000 per year.[6] Her state retirement plan is valued at $41,186.[7] Prior to her employment with the State of Delaware, the Wife worked for Wesley Preschool and Bank of America, earning approximately $20,000 per year. The Wife's premarital assets included a home, car, and a mutual fund.[8]

The Husband, forty-nine years old at the time of the hearing, is in fair to poor health.[9] He has a bachelor's degree in business administration and is close to earning his master's degree. The Husband is a former Officer of the United States Army, who retired on disability due to medical reasons in 1993.[10] Since retiring from the military, the Husband had various jobs, including stints as a financial representative for Independent Research Association ("IR Assoc.") and United Services Planning Association ("USPA", a.k.a. "First Command"). The Husband also invested in real estate. The Husband's annual income attributed by the court was $52,000.[11] His premarital assets included $9,529 in the Pioneer Three Fund, $31,922 in the Pioneer Two Fund, $25,944 in one Fidelity Destiny account, and $62,913 in a second Fidelity Destiny account. In addition, the Husband inherited $50,000 from one aunt and $25,000 from another aunt during the marriage.

---

er the property award is in lieu of or in addition to alimony."

4. Del.Code Ann. tit. 13, § 1513(a)(3) requires the court to consider, upon request, "[t]he age, health, station, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties."

5. At the time of the proceeding, the children's ages were 6, 12, and 15. The Husband was incarcerated after pleading "no contest" to attempted assault in the second degree and possession of an incendiary device. He is not incarcerated at this time.

6. *Wife (K.M.H.) v. Husband (J.A.H.)*, No. 03–29470, at 16 (Del.Fam.Ct. Feb. 7, 2008).

7. *Id.* at 13.

8. The Wife testified that the account was worth approximately $1000 and the home

represented a net zero contribution as she received no proceeds when she sold the home other than the assumption of the mortgage.

9. *Wife (K.M.H.) v. Husband (J.A.H.)*, No. 03–29470, at 16. The Husband suffered a fall while stationed in Germany in September of 1993. *Id.* He has also had a series of slip and fall accidents as well as multiple car accidents since 2001. *Id.* As a result, the Husband suffers from retrograde amnesia and has periods of time for which he has no memory. He also takes medication for heart problems, inflammation, high blood pressure, seizures, and migraines. *Id.*

10. The Husband retired as a result of his September 1993 fall.

11. *Wife (K.M.H.) v. Husband (J.A.H.)*, No. 03–29470, at 16.

For a good portion of the marriage, both the Husband and the Wife were stay-at-home parents. The Husband was the "breadwinner" and did the majority of the cooking, shopping, and activities with the children, while Wife shouldered most of the childcare responsibilities. After the separation, the Husband paid for the Wife's life insurance and IRA until approximately November 2004.[12] In addition, he paid the mortgage, and for food, utilities, clothing and other costs while he was still living in the home.

The Husband and the Wife owned numerous real estate property investments, all but one of which were sold and the proceeds placed in an escrow account by the time of the November 2007 hearing.[13] These investments were funded by a $200,000 loan from First Command (the "First Command Debt") and the Husband's inheritances. In April 2005, the parties agreed that $2,200 would be paid to the Wife from the escrow account as combined alimony and child support. The payment was meant to cover the $1,200 per month tuition payment for one of the children, as well as other household expenses. The Wife's income at this time was $28,000 per year and increased to $43,000 by May 2006.

On March 17, 2007, in accordance with Family Court Civil Rule 52(d), the parties submitted an ancillary Pre–Trial Stipulation, which was revised on November 20, 2007.[14] Subject to the Stipulation, the Wife waived alimony and the parties agreed to sell the remaining investment property in Cape Coral, Florida. At this time, the Husband did not raise the issues of interim alimony, the tax consequences of the sale of the Cape Coral property, the specific amount of his inherited funds, or that he could trace or account for his premarital assets.

An ancillary hearing was held on November 20, 2007. The Court issued its decision on February 7, 2008, dividing the marital property 60% to Wife and 40% to the Husband.[15] The Husband appeals, claiming the overall split of the marital estate should have been divided equally.

### Property Division Statute— Section 1513(a)

In all property distribution cases, upon request of either party, the Family Court is required to determine how the marital property shall be apportioned or assigned to each spouse.[16] The party making the request has the burden of proving by a preponderance of the evidence the reasons why the marital property should be so

12. The Husband paid approximately $237 per month for the Wife's life insurance and $166 per month for her IRA.

13. All properties except the Cape Coral property were sold by the time of the hearing. The parties agreed that this property is to be sold and the net proceeds are to be deposited into the escrow account. At the time of the hearing, $316,434.14 had been deposited into the escrow account, which accrued $6,334.97 in interest. A total of $223,651.20 in withdrawals were made—including $68,200 in alimony and child support—leaving $99,117.90 remaining in the account. *Wife (K.M.H.) v. Husband (J.A.H.)*, No. 03–29470, at 3, 6.

14. *See* Del.Fam. Ct. Civ. R. 52(d), which provides that:

> At least 7 days prior to trial in any ancillary action, each party, or counsel, shall submit to the Court proposed findings and conclusions, including supporting reasons therefor concerning all material elements of the case. Each proposed finding of fact shall contain a brief reference to the evidence to be offered in support of that finding. The submission shall include a proposed form of order.

15. *Wife (K.M.H.) v. Husband (J.A.H.)*, No. 03–29470, at 20.

16. Del.Fam. Ct. Civ. R. 52(a)(1), (a)(3)

awarded, to whom, and the value to be assigned.[17] After the necessary factual record has been made, the court must "make findings as to the value of all marital property, including the identity and value of each significant item of property, and the nature of title thereto," including awarding property as titled if the party fails to meet the burden of proof.[18] In making its determination, the court must also consider and apply the relevant statutory factors as outlined in Del.Code Ann. tit. 13, § 1513, supported by the evidence, particularly when the grant of a request will result in a transfer of title to property from one spouse to another.[19]

### Standard of Review

■ The Husband contends that the Family Court erred by failing to consider properly all of the statutory factors set forth in Del.Code Ann. tit. 13, § 1513(a). As a result, the Husband argues the division of marital property ordered by the court was inequitable, was not supported by the record, was an abuse of discretion, and was clearly erroneous. Our "standard and scope of review of an appeal from the Family Court extends to a review of the facts and law as well as to a review of the inferences and deductions made by the Trial Judge."[20]

■ Where the court's decision implicates a ruling of law, we review the court's determination *de novo*.[21] If the Family Court applied the law correctly, we review for an abuse of discretion.[22] We will not disturb the Trial Judge's findings of fact "where those inferences are supported by the record and are the product of an orderly and logical deductive process."[23] We have repeatedly emphasized that the Family Court has broad discretion under section 1513 to divide marital property.[24]

Under Del.Code Ann. tit. 13, § 1513(a), "in a proceeding for divorce or annulment, the [Family] Court shall, upon request of either party, equitably divide, distribute and assign the marital property between the parties without regard to marital misconduct, in such proportions as the Court deems just after considering all relevant factors...." The statute then lists eleven factors that the court is to consider. When the Family Court awards marital property on a basis other than a 50/50 split, the aggrieved party is entitled to have the decision supported by application of the section 1513(a) factors.[25]

### Section 1513(a)(11): Tax Consequences

■ The Husband argues that the Family Court did not properly evaluate section 1513(a)(11) because it failed to consider "the tax consequences of its decision on the parties and the effect of those consequences on the valuation of the marital estate." In the Rule 52(d) stipulation, the Husband raised his concern that the par-

17. Del.Fam. Ct. Civ. R. 52(a)(3)(i)

18. Del.Fam. Ct. Civ. R. 52(a)(2), (a)(5)

19. Del.Fam. Ct. Civ. R. 52(a)(3)(ii), (a)(6).

20. *Jones v. Lang*, 591 A.2d 185, 186 (Del. 1991) (quoting *Solis v. Tea*, 468 A.2d 1276, 1279 (Del.1983)).

21. *Waters v. Div. of Family Servs.*, 903 A.2d 720, 724 (Del.2006).

22. *Jones v. Lang*, 591 A.2d at 186 (citing *W. v. W.*, 339 A.2d 726, 727 (Del.1975)).

23. *Jones v. Lang*, 591 A.2d at 187 (quoting *Solis v. Tea*, 468 A.2d at 1279).

24. *Bothwell v. Bothwell*, 877 A.2d 52, 2005 WL 1653619, at *1 (Del.2005) (unpublished table decision); *Wife (L.R.) v. Husband (N.G.)*, 406 A.2d 34, 35 (Del.1979).

25. *Wife (L.R.) v. Husband (N.G.)*, 406 A.2d at 35.

ties would both incur substantial capital gains consequences, and his testimony at trial reflected similar concerns.[26] The Husband asserts, on appeal, that the Family Court should have also considered the tax consequences of the court-ordered sale of the Cape Coral property and satisfaction of the First Command Debt. This argument is without merit.

The Family Court's decision expressly addressed the issue of the capital gains consequences raised in the stipulation and at trial. The trial judge found that "[t]he parties each anticipate substantial capital gains from the sale of several marital properties, one consequence of which may be significant state and federal income taxes owed for tax years 2005 and 2006."[27] Thus, the trial judge considered tax consequences to the extent that such issues were raised through the Rule 52(d) stipulation and at trial.

The Family Court was not required, however, to consider tax consequences not raised in the stipulation and at trial.[28] In *Wildey v. Wildey,*[29] the Family Court found that the wife's claim for a tax credit was not set forth in her 52(d) stipulation with sufficient specificity when she claimed merely that there was "a dispute regarding the nature and extent of any reimbursement and/or payment owed by one party to the other party." The Family Court found this was insufficient to put the husband on notice of her tax credit claim and ruled the issue was not properly before the court.[30]

The Husband relies on *Murphy v. Murphy,*[31] in which this Court reversed and remanded the decision of the Family Court dividing the marital estate because the Family Court failed to consider the tax consequences of the Husband's annuity. We expressly rested our holding, however, on the fact that the Husband had *requested* at both the ancillary hearing and in his motion for reargument that the Family

**26.** The Husband's tax consequences portion of the Pretrial Stipulation provides, "the parties will have substantial capital gains consequences in [future] years ... the actual tax liabilities of the parties are not known." Revised Rule 52(d) Ancillary Pretrial Stipulation at 10, *Wife (K.M.H.) v. Husband (J.A.H.),* No. 03–29470 (Del.Fam.Ct. Feb. 7, 2008). This position is also demonstrated through the Husband's testimony. Stearner, who prepared the parties' tax returns from 2002 through 2005, testified as to his role in preparing such returns and the proceeds from the sale of the Husband's premarital home. He did not testify regarding any future tax consequences.

**27.** *Wife (K.M.H.) v. Husband (J.A.H.),* No. 03–29470, at 20.

**28.** *See* Del.Fam. Ct. Civ. R. 52(a)(1) ("In all property distribution cases, the Court shall: ... Act upon the request of either party...."); Del.Fam. Ct. Civ. R. 52(e) ("Failure to file a proper submission under subparagraph (d) above may result in the court's sua sponte continuing the hearing; in the adop-

tion of the findings, conclusions and order submitted by the other party as the decision and order of the Court; in the imposition of counsel fees and costs on the offending party; in the preclusion of the presentation of a claim or defense or the introduction of evidence by the offending party; or such other sanctions or orders as the Court deems just."); *see also, e.g., K.A.B. v. G.R.B.,* 2002 WL 32101234, at *1 (Del.Fam.Ct. Oct. 23, 2002) (barring mother from introducing assets not contained in 52(d) stipulation and not presented at trial); *Johnson v. Johnson,* 1999 WL 692066, at *6 (Del.Fam.Ct. Apr. 5, 1999) (refusing to permit the issue of alimony to be argued because it was not listed as an issue in dispute in the 52(d) stipulation).

**29.** *Wildey v. Wildey,* 1998 WL 425479, at *3 (Del.Fam.Ct. Mar. 10, 1998)

**30.** *Id.* at *3

**31.** *Murphy v. Murphy,* 604 A.2d 418, 1991 WL 235404, at *1 (Del.1991) (unpublished table decision).

Court address the probable tax consequences related to the annuity.

The record reflects that in this case, however, the Husband made no such request regarding the Cape Coral property or the First Command Debt prior to this appeal. In fact, the Husband concedes that these issues "are in addition to the capital gains' tax liability the parties expect to suffer for tax years 2005 and after . . . ." Accordingly, the Family Court did not abuse its discretion by not addressing these additional tax issues.

### Section 1513(a)(4): Alimony

The Husband next argues that the Family Court did not properly evaluate section 1513(a)(4) because it failed to consider "that the property awarded to Wife was in *addition* to the excessive interim alimony received by Wife." The Husband's argument is without merit. The Family Court specifically addressed this issue in its decision, finding that "[t]he property award is in lieu of alimony."[32] In addition, the Family Court held, "[o]ver Husband's objection, this amount [of unallocated alimony and child support in the amount of $2,200 a month] shall be attributed solely to Husband as it was his court-ordered responsibility to make such payments. To do otherwise would, in essence, require the Wife to pay herself support, which is inequitable."[33]

These factual findings were supported by the Rule 52(d) stipulation in which both the Husband and the Wife took the position that the Wife "waived her alimony request" and that the "property award is in lieu of alimony."[34] Accordingly, the Family Court took into consideration the circumstances surrounding interim alimony when it rendered its final judgment. Consequently, the argument that the Family Court abused its discretion is without merit.

### Section 1513(a)(3); Health of the Parties

The Husband argues that the Family Court did not properly evaluate section 1513(a)(3) because it failed to give appropriate consideration to the Husband's poor health and deficient memory, compared with the good health enjoyed by the Wife. The Husband's argument is not supported by the record. In its final judgment, the trial judge reviewed the Husband's medical history and found the Husband was in "fair to poor health."[35]

### Section 1513(a)(6): Contributions to the Marital Estate

■ The Husband argues that the Family Court did not properly evaluate section 1513(a)(6) because it failed to consider his "extraordinary contributions to the acquisition, preservation, and appreciation of the marital estate." In particular, the Husband asserts that the Family Court failed to consider: (a) the Husband's contributions of premarital assets; (b) the Husband's contribution of $75,000 of inher-

**32.** *Wife (K.M.H.) v. Husband (J.A.H.)*, No. 03–29470, at 17.

**33.** *Id.* at 6–7.

**34.** Revised Rule 52(d) Ancillary Pretrial Stipulation at 8, *Wife (K.M.H.) v. Husband (J.A.H.)*, No. 03–29470 (Del.Fam.Ct. Feb. 7, 2008). In the section of the 52(d) stipulation which asks "[w]hether the property award is in lieu of or in addition to alimony," the Wife

responded that the "property award is in lieu of alimony." *Id.* The Husband did not contest this. *Id.*; *see also Johnson v. Johnson*, 1999 WL 692066, at *6 (Del.Fam.Ct. Apr. 5, 1999) (refusing to permit the issue of alimony to be argued because it was not listed as an issue in dispute in the 52(d) stipulation).

**35.** *Wife (K.M.H.) v. Husband (J.A.H.)*, No. 03–29470, at 16.

ited assets; (c) the Husband's post-separation payments to Wife; and (d) the Husband's contributions as a homemaker. The Husband contends that the Family Court failed to weigh these extraordinary contributions vis-a-vis the Wife's minimal contributions.

With regard to his premarital assets, the Husband asserts that the Family Court ignored the $130,308 he contributed from four separate investment accounts, which was substantial compared to the Wife's minimal premarital assets. The Husband testified at trial as to the account balances and introduced copies of the account statements into evidence. He then testified that he transferred the funds into the Equity Trust IRA account, but could not present any document that could trace the transfer. As a result, the trial judge determined that the Husband "failed to present any evidence" to support his claim that the Equitable Trust IRA in his name contained premarital funds only.[36] The final judgment does not address these assets elsewhere in its decision. Therefore, it appears that the Family Court awarded the Husband no credit for these contributions.

Regardless of whether the Husband could "trace" the $130,308 in premarital assets to the Equity Trust IRA account, he raised these assets in the Rule 52(d) stipulation and was able to establish their pre-marriage existence through testimony and documentary evidence. Logically, there are only three possibilities for the disposition of these assets: first, that they were commingled into marital assets; second, that they were spent during the marriage; or third, that they are part of one or more existing retirement accounts owned by Husband. Therefore, the Husband either contributed the funds to the marriage or the account should be treated as his separate property at the time of division.

In either case, the Husband was entitled to some consideration of his contribution of these considerable premarital assets.[37] The Family Court made no assessment of the evidence showing a significant disparity in premarital contributions, which was supported by the record.[38] Instead, it simply concluded that "[b]oth parties contributed to the acquisition and preservation of marital property during the marriage." [39]

As to his inherited assets, the Husband asserts that the Family Court disregarded his testimony that he individually inherited $50,000 from one aunt, and $25,000 from another.[40] Although the Wife argues that the Husband failed to provide any documentary evidence for the Family Court to

---

**36.** *Id.* at 13.

**37.** If the Husband could "trace" the premarital property to some marital asset, he would be entitled to a credit under Del.Code Ann. tit. 13, § 1513(b), which explains that property that is purchased prior to marriage is not considered "marital property" for purposes of division. However, even if the Husband cannot "trace" the premarital property and it is commingled with marital assets, under Del. Code Ann. tit. 13, § 1513(a)(6), the Husband is entitled to some consideration of his contribution.

**38.** Although the wife owned a house, it was sold and the buyer assumed the mortgage, resulting in a net zero contribution. She also had a car and an investment account worth approximately $1000.

**39.** *Wife (K.M.H.) v. Husband (J.A.H.),* No. 03–29470, at 17.

**40.** Although the issue of an inheritance may appear to be better analyzed under 1513(a)(9), which addresses gifts, the Family Court has considered the contribution of inherited property under 1513(a)(6). *See R.S.M. v. G.K.M.,* 2008 WL 1947915, at *6 (Del.Fam.Ct. Mar. 19, 2008) (determining that Husband was entitled to credit pursuant Del. Code Ann. tit. 13, § 1513(a)(6) for "a significant contribution of inherited property").

consider with respect to how these inheritances were used, the Husband raised the issue of his inherited assets in the Rule 52(d) stipulation and testified at trial as to their specific amount and their use, which was to acquire marital property. The Family Court's decision contains no discussion of this contribution and effectively disregards their existence. The Family Court was obligated to consider the inherited assets that the Husband contributed to the marriage.[41]

As to his post-separation contributions, the Husband asserts that the Family Court failed to recognize his payments to the Wife's IRA and life insurance policy in the amount of $6,448, and his contributions towards the support of the family. The Husband raised these issues in the Rule 52(d) stipulation and presented testimony and documentary evidence as to the payments. The record does not clearly reflect how these matters were addressed by the Family Court.

The Husband asserts that the Family Court failed to recognize his contributions during the marriage as a homemaker. That assertion is not supported by the record. After hearing their testimony, the Family Court concluded "[b]oth parties contributed to the acquisition and preservation of marital property during the marriage."[42] The record supports this conclusion and indicates, as the Husband acknowledges, that both parties "contributed equally as homemakers." Accordingly, the Family Court properly exercised its discretion on this issue.

### *Conclusion*

This matter is remanded for additional consideration of the Husband's section 1513(a)(6) claim with regard to his premarital assets, his inheritances and his post-separation contributions. The Family Court should submit its findings of fact and conclusions of law to this Court within sixty days. Jurisdiction is retained.[43]

---

41. *See DG.C v. RC*, 2006 WL 4552895, at *6 (Del.Fam.Ct. Aug. 30, 2006) (discussing sufficiency of evidence regarding the Wife's alleged inheritance in accord with section 1513(a)(9)).

42. *Wife (K.M.H.) v. Husband (J.A.H.)*, No. 03–29470, at 17.

43. Del.Supr. Ct. R. 19(c).