IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| PETER ROBINSON,[1] | § | |
| | § | No. 234, 2022 |
| Respondent Below, | § | |
| Appellant, | § | Court Below—Family Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | File No. CN01-07655 |
| MELISSA ROBINSON, | § | Petition No. 21-27095 |
| | § | |
| Petitioner Below, | § | |
| Appellee. | § | |

Submitted: February 24, 2023
Decided:  April 27, 2023

Before **SEITZ**, Chief Justice; **VALIHURA** and **TRAYNOR**, Justices.

## **ORDER**

Upon consideration of the parties' briefs and the record below, it appears to the Court that:

(1) The respondent below-appellant, Peter Robinson ("the Father"), filed this appeal from the Family Court's May 31, 2022 order reversing the Commissioner's March 4, 2022 order denying the petition for a protection from abuse ("PFA") order filed by the petitioner below-appellee, Melissa Robinson ("the Mother"), and the Family Court's June 27, 2022 order granting the Mother's motion

---

[1] The Court previously assigned pseudonyms to the parties under Supreme Court Rule 7(d).

for attorneys' fees. We find no error or abuse of discretion in the Family Court's decision. Accordingly, we affirm the Family Court's judgment.

(2) The parties are the parents of a 19-year-old daughter ("the Daughter") and a 15-year-old son ("the Son"). On October 14, 2021, the Father was charged with harassing the Mother. The Father's conditions-of-release included that he have no contact with the Mother. On November 8, 2021, the Family Court awarded sole legal custody of the children to the Mother.[2]

(3) On November 16, 2021, the Mother filed a *pro se* petition for a PFA order. She alleged that the Father had violated no-contact orders with her and others and repeatedly sent her harassing texts and emails. On December 6, 2021, the Father filed a *pro se* petition for a PFA order. He alleged that the Mother had filed frivolous complaints against him with the police.

(4) On February 25, 2022 and March 4, 2022, a Family Court Commissioner held a hearing on the parties' PFA petitions. The Mother was represented by counsel at the hearings. The Commissioner denied the Mother's request to amend her petition to include a request for attorneys' fees, but said she could file a motion for attorneys' fees if her petition was successful. The Father

---

[2] The custody order provided that the Family Court had no jurisdiction over the Daughter's custody when she turned eighteen.

suggested several times that both petitions be dismissed, but the Mother wished to pursue her petition.

(5) The Father called as witnesses two police officers, the family's former therapist who was treating the Father, one of his employees, his nephew, and a friend. He also testified on his own behalf. The Mother called the Daughter and the Father as witnesses. She also testified on her own behalf. At the end of the second day of testimony, the Commissioner denied both PFA petitions.

(6) On April 4, 2022, the Mother filed a petition for review of the Commissioner's order and sought attorneys' fees. The Father responded to the petition. On May 31, 2022, the Family Court reversed the Commissioner's ruling as to the Mother's petition and granted the Mother's petition for a two-year PFA. Based on text messages the Father sent to the Mother between September 26, 2021 and October 10, 2021, the Family Court found that the Father had engaged "in a course of alarming or distressing conduct in a manner which is likely to cause fear or emotional distress or to provoke a violent or disorderly response."[3] The Family Court also held that the Mother could file a motion for attorneys' fees.

(7) On June 10, 2022, the Mother's counsel filed a motion for $7,227.50 of attorneys' fees she incurred in pursuing her PFA petition and opposing the Father's PFA petition. The Father opposed the motion. On June 27, 2022, the Family Court

---

[3] 10 *Del. C.* § 1041(1)(d).

granted the Mother's motion and ordered the Father to pay $4,940.00 of the Mother's attorneys' fees. This appeal followed.

(8) On appeal, the Father argues that the Family Court erred in reversing the Commissioner's decision and finding that he committed acts of abuse against the Mother. He also contends that the Family Court erred in awarding attorneys' fees to the Mother.

(9) This Court's review of a Family Court order, including the Family Court's review of a Commissioner's order, extends to a review of the facts and the law, as well as to the inferences and deductions made by the judge.[4] We review issues of law *de novo*.[5] If the Family Court has correctly applied the law, our standard of review is abuse of discretion.[6]

(10) To obtain a PFA order, the Mother had to establish by a preponderance of the evidence that the Father had committed an act of domestic violence.[7] A person commits domestic violence against a former spouse if the person "[e]ngag[es] in a course of alarming or distressing conduct in a manner which is likely to cause fear or emotional distress or to provoke a violent or disorderly response."[8] Relying on

[4] *Kraft v. Mason*, 2010 WL 5341918, at *2 (Del. Dec. 20, 2010) (citing *Solis v. Tea*, 468 A.2d 1276, 1279 (Del. 1983)).
[5] *In re Heller*, 669 A.2d 25, 29 (Del. 1995).
[6] *Jones v. Lang*, 591 A.2d 185, 187 (Del. 1991).
[7] 10 *Del. C.* § 1044(b).
[8] 10 *Del. C.* § 1041(1)(d), 2(a).

this Court's decision in *Painter v. Painter*,[9] the Family Court judge held that the Commissioner erred in finding that a barrage of text messages the Father sent the Mother between September 26, 2021 and October 10, 2021 did not constitute an alarming or distressing course of conduct likely to cause fear or emotional distress under Section 1041(1)(d).

(11) The Father started sending the text messages after the Son told him to stop coming to his school on September 26th. The Father denied coming to the school and questioned why the Son would think he was there. The Mother told him to stop calling the Son a liar because the Son had seen him at his school two days earlier.

(12) Later on September 26th, the Father texted the Mother "[y]ou're indicating our son is having paranoid delusions. This is extremely serious."[10] The Mother accused the Father of gaslighting and advised him to stop. Instead, he sent her multiple text messages over the course of eighty minutes. In those texts, the Father: (i) accused the Mother of having worsening "psychotic snaps," making "very serious allegations" about the children's "declining mental health," and being a "VERY VERY sick person;"[11] (ii) threatened to tell the Family Court to protect the

---

[9] 2019 WL 6320455 (Del. 2019) (affirming the Family Court's issuance of a two-year PFA order based on the father repeatedly sending lengthy, accusatory, and insulting text messages to the mother).

[10] Respondent's Ex. 2.

[11] *Id.*

children and to involve the Son's school; (iii) claimed her own mother was afraid of her and that the Son had told the Family Court judge she was "psychologically abusing him;"[12] and (iv) repeatedly described the Mother as abusive. Between September 27th and October 10th, the Father continued to send the Mother messages, despite her repeated pleas for him to stop, accusing her of abuse, not caring that the Son was suffering delusions or encountering strangers at school, and calling her sick and deluded.

(13) Having reviewed the text messages in the context of this Court's decision in *Painter*, the Family Court did not err in concluding that the Mother had established by a preponderance of the evidence that the Father had "[e]ngag[ed] in a course of alarming or distressing conduct in a manner…likely to cause fear or emotional distress."[13] Over a two-week period, the Father repeatedly sent texts accusing the Mother of sick and abusive behavior that caused the Son to suffer from mental delusions. He continued to engage in this conduct even after the Mother begged him to stop harassing her and leave her alone. While every insulting or obnoxious text does not constitute abuse, the Family Court could appropriately determine, based on the number and content of the Father's texts, that the Father had

---

[12] *Id.*

[13] 10 *Del. C.* § 1041(1)(d), 2(b), 1044(b).

engaged in an alarming or distressing course of conduct likely to cause fear or emotional distress.

(14) The Father contends that his conduct cannot constitute abuse because he was simply defending himself against the Mother's false accusations, protecting the Son from abuse, and trying to obtain information about the Son's welfare. He is mistaken. Repeatedly accusing the Mother of abusing the Son to the point he suffered paranoid delusions was unnecessary to accomplish any of those objectives. The fact that the Father continued sending abusive texts even after the Mother stopped responding and accusing him of going to the Son's school further belies his claims of self-defense. The Father also contends that the Family Court ignored innocuous texts he sent to the Mother about the children between September 26th and October 10th, but the fact that he sent some unobjectionable texts does not make his other texts during that time period non-abusive.

(15) Contrary to the Father's contentions, the Family Court applied the proper standards in reviewing the Commissioner's order. In reviewing a Commissioner's order, the Family Court must make "a *de novo* determination of those portions of the Commissioner's order to which objection is made."[14] The

---

[14] 10 *Del. C.* § 915(d)(1). *See also* Fam. Ct. Civ. R. 53.1(e) ("From an appeal of a commissioner's final order, the Court shall make a *de novo* determination of the matter (that is, the matter shall be decided anew by a judge), based on the record below.").

7

Family Court "may accept, reject or modify in whole or in part the order of the Commissioner."[15]

(16) The Father also argues that the Family Court gave insufficient weight to the Commissioner's factual findings, especially as to witness credibility, but ignores or mischaracterizes key aspects of the Commissioner's findings. For example, as to the Father's claims concerning the Son suffering a breakdown or delusions, the Commissioner stated:

> Some of the things that you said in the text messages I think on 9/27 and on 9/26, it's disturbing, okay, the language that you use, and I'm quite puzzled, quite frankly, that you keep coming back to the idea of [the Son] suffering some type of psychotic break or having delusions.
>
> Sir, I've listened to the record, I've read [the Son's] letter, I listened to the witnesses, and I'm not convinced that he had any such thing or maybe he mistook you for somebody else...or maybe he thought he saw you and didn't....But I have not been presented any evidence with any sort of psychotic break or delusion. But yet you keep bringing it up and bringing it up and using those words.[16]

The Family Court applied the proper legal standards in determining that the Father's text messages constituted acts of domestic violence.

(17) Finally, the Father challenges the Family Court's award of attorneys' fees to the Mother. He argues that he cannot be held liable for the Mother's attorneys' fees under 13 *Del. C.* § 1515 because the Family Court failed to consider

---

[15] 10 *Del. C.* § 915(d)(1).
[16] March 4, 2022 Hearing Tr. at 129.

8

the financial resources of both parties and there was no evidence that the Father acted in bad faith. Section 1515 provides that the Family Court may, after considering the financial resources of both parties, order a party to pay all or part of the attorneys' fees incurred by the other party in maintaining or defending any proceeding under Title 13.

(18) The Mother invoked 10 *Del. C.* § 1045, not Section 1515, in her motion for attorneys' fees. Under Section 1045(a)(7), the Family Court may order the respondent to pay attorneys' fees incurred by the petitioner because of domestic violence committed by the respondent. The Mother also argued that she was entitled to attorneys' fees she incurred as a result of the Father's overly litigious conduct, which included his repeated efforts to relitigate the November 8, 2021 custody order despite her counsel's objections and the Commissioner's admonishments throughout the two-day PFA hearing. The record supports the Family Court's award of attorneys' fees to the Mother.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Family Court is AFFIRMED.

BY THE COURT:

/s/ Collins J. Seitz, Jr.
Chief Justice

9